In the Matter of the Accounting of CORTLANDT F. BISHOP, as Trustee of MATILDA W. WHITE, Deceased.

AMY B. BISHOP et al., as Executors of CORTLANDT F. BISHOP, Deceased, Petitioners; BEATRICE B. BERLE et al., Respondents.

Surrogate's Court, New York County, October 22, 1943.

*Joseph R. Shaughnessy* and *George L. Allin* for George L. Allin, as executor, respondent.

*Winthrop H. Kellogg* for Beatrice B. Berle, respondent.

*Willkie, Owen, Otis, Farr & Gallagher* for New York Trust Company, as trustee under the will of Cortlandt F. Bishop, deceased, respondent.

*Saxe, Bacon & O'Shea* for Trustees of Columbia University in the City of New York and another, respondents.

*Emmet, Marvin & Martin* for Home for Incurables, respondent.

*Samuel S. Korn* and *Max Seltzer* for Amy B. Bishop and another, petitioners.

FOLEY, S. This is an application to vacate a decree made May 16, 1938, judicially settling the account of the transactions of Cortlandt F. Bishop as trustee of the residuary trust under the will of the testatrix. That decree also approved a written agreement of settlement, entered into between the parties, dated April 11, 1938, of the issues raised by the objections filed by Beatrice Bishop Berle to the account. The testatrix died in 1907. Mr. Bishop was her nephew and the life tenant of the trust. His daughter, Mrs. Berle, was the sole remainderman of the trust. Mr. Bishop died on March 30, 1935. During the period prior to his death he was the sole surviving trustee. The accounting of his transactions was initiated by George L. Allin as executor, and Amy Bend Bishop, his widow, and Edith Nixon, now Mrs. Falcke, a friend, as executrices under his will. Under the will of Mr. Bishop, his widow is a life tenant of a trust of one half of his residuary estate. Mrs. Falcke was designated as the life tenant of the other half and a vested remainderman of one half of the residue. The remaindermen of the other half are four charitable corporations.

The issues are simple and might have been disposed of by a short decision. Desirable brevity has been departed from only because the voluminous moving papers and exhibits made necessary the discussion of the many charges raised in them.

Mrs. Bishop and Mrs. Falcke are the moving parties here. In general they assert that the decree and settlement agreement sought to be vacated were procured and induced by duress and fraud perpetrated by Mrs. Berle and certain persons associated with her.

In their answering affidavits these charges are vigorously denied by Mrs. Berle, her husband, Adolf A. Berle, Jr., and by Mr. Allin, executor of Mr. Bishop's estate.

The specific questions presented for determination here are raised by the motion of the respondents to dismiss the application:

(1) Upon the ground that the allegations of duress and fraud in the supporting affidavits are insufficient in law to justify the vacatur of the decree and the setting aside of the settlement agreement. Incidental to such motion, respondents assert that none of the legal grounds for the vacatur of a decree of this court under subdivision 6 of section 20 of the Surrogate's Court Act has been asserted by Mrs. Bishop and Mrs. Falcke, the applicants.

(2) That the applicants have been guilty of laches in delaying the making of the application for a period of over four and one-half years since the date of the making of the decree.

(3) That the applicants are estopped from obtaining the relief sought because of the rights of other persons who approved the agreement of settlement and because of their acquiescence and confirmation of the settlement in subsequent proceedings which were terminated by formal decrees.

The Surrogate holds that the allegations of duress and fraud in the moving papers and in the reply affidavits are insufficient in law and that the applicants are barred by laches and estoppel. The motion to dismiss the vacatur application is granted.

The rules of law pertaining to (1) applications to vacate a decree and (2) the attempts to nullify a settlement agreement reached by persons interested in estates have been firmly established in many decisions over a long period of years.

A decree may be set aside only upon the grounds set forth in subdivision 6 of section 20 of the Surrogate's Court Act. It may be opened only upon the ground of fraud, newly discovered evidence, clerical error or other sufficient cause. The limitations upon the powers of the Surrogate have been the subject of frequent restatements. (*Matter of Starbuck,* 221 App. Div. 702, affd. 248 N. Y. 555; *Matter of Brennan,* 251 N. Y. 39; *Matter of Hawley,* 100 N. Y. 206; *Matter of Tilden,* 98 N. Y. 434; *Matter of Sielcken,* 162 Misc. 54; *Matter of Marsullo,* 160 Misc. 148, affd. 254 App. Div. 849; *Matter of Gilford,* 155 Misc. 339, affd. 247 App. Div. 782.)

In a proper case where fraud, duress, collusion or imposition has been established, the Surrogate may vacate the decree.

Similarly, in attacks upon the validity of a settlement agreement of estate controversies it must be charged and proved that the agreement was procured by fraud, imposition, duress or other vitiating ground. The courts have strongly favored the

making of compositions in estates and after the settlement agreement is made, if bad faith or fraud be absent, give vigorous support to its validity. (*Matter of Cook,* 244 N. Y. 63; *Slater* v. *Slater,* 208 App. Div. 567, affd. on opinion below 240 N. Y. 557; *Minehan* v. *Hill,* 144 App. Div. 854; Matter of Crowe, 139 Misc. 648; *Matter of Gould,* 172 Misc. 396, 402.)

In the application of these tests to the allegations set forth in the moving papers of the applicants, the facts leading up to the controversy between Mrs. Berle and her father, Mr. Bishop, and the executor and executrices of his estate become important.

After Mr. Bishop's death and in the latter part of 1935 Mrs. Berle retained an attorney to investigate charges of mishandling by him as trustee of the assets of this estate. As a result of his investigation a claim was filed against the Bishop estate by Mrs. Berle in an unliquidated amount in December of 1935. The proceeding for the accounting of Mr. Bishop's acts as trustee was initiated in 1937. Objections were filed by Mrs. Berle shortly afterwards. These objections raised serious charges against Mr. Bishop's trusteeship. Bad faith, mismanagement of the trust assets, self-dealing, divided loyalty and breach of trust were charged against him. These accusations have been summarized by the then and present attorney of Mrs. Berle that Mr. Bishop had used the machinery provided by section 116 of the Real Property Law to transfer the real estate of the trust in this estate to a corporation in exchange for a minority stock interest in that corporation; that he owned personally a majority of the stock; that he had conducted its affairs as if it were a personal corporation of his own; that he mortgaged its property contrary to the provisions of the will of the testatrix here and engaged in an ill-advised and speculative building operation as if he had been freed from all trust restraints; that his acts resulted in the loss of the real estate and that the trust suffered pecuniary damages for which he and his estate were accountable. It was estimated under Mrs. Berle's claim that the amount of a surcharge would vary between the sum of $875,000 as a minimum, and $1,080,000 as a maximum.

There is uncontradicted documentary evidence over the signatures of Mrs. Bishop and Mrs. Falcke that they desired a speedy settlement of the questions raised by Mrs. Berle's objections to the account. Negotiations towards that objective between the attorneys for the parties covered at least a period of one year. The settlement ultimately reached and embodied

in the agreement called for the payment of $515,000 in cash and properties out of the Bishop estate.

The only allegations of duress alleged by Mrs. Bishop and Mrs. Falcke are that Mrs. Bishop " was in deadly fear " of her daughter and that she believed that if she contested the objections filed to the account Mrs. Berle " would take legal proceedings to have me committed to a lunatic asylum." It is Mrs. Bishop's statement that these threats were made about the year 1926, nine years before the first assertion of Mrs. Berle's claim against her father's estate, and from twelve to thirteen years before the period of the settlement negotiations. In an attempt to bring these charges down to a date near the negotiations Mrs. Bishop claims that in 1935 her husband told her he had some apprehension that Mrs. Berle might try to prove her insane and that Mrs. Bishop's sister, now dead, informed her " she was worried when she was told by her friends things that Mrs. Berle said about me." These allegations are based upon hearsay through two deceased persons and are flimsy and irrelevant. The alleged apprehension of the husband and the concern of the sister are futile to support any charge of duress exercised upon Mrs. Bishop by her daughter.

In conclusion she affirms that the stipulation was signed by her " *partly* because of the fear of my daughter that she would attempt to have me incarcerated as insane." (Italics supplied.) Apparently from her own statement by the use of the word " partly ", a considerable degree of independence of mind and freedom from fear still remained with her.

There is not the slightest charge that Mrs. Berle made any threat directly to her mother or that her husband or any person in her behalf made such a threat in connection with the settlement agreement. During the period of negotiations and from the time of the filing of the objections to the account it is an undisputed fact that Mrs. Berle, her husband, Mrs. Bishop and Mrs. Falcke never met and, of course, never could have discussed the merits or demerits of their respective cases. All of the negotiations and discussions took place between the attorneys for the parties.

Finally, the alleged state of mind of Mrs. Bishop must have disappeared long before the settlement negotiations because the alleged threatened action by her daughter had not ripened into actuality.

Threats made as to unrelated matters many years before a contract is entered into and neither directly nor indirectly connected with such contract are not duress. Nor does a state of

mind, such as fear, which can never be the subject of a contradiction because it rests upon the subjective opinion of the person who asserts it, constitute coercion where the charge of coercion is not founded upon acts which were exercised upon the victim by the party charged with duress. Despite the reasons which Mrs. Bishop may have had in her mind for entering into the settlement, there is nothing in the allegations as to the conduct of Mrs. Berle which would constitute duress or fraud on her part.

Under the rules applicable to duress where the facts are not disputed, the question whether, admitting them all, they amounted to duress is a pure question of law. (*Glicman* v. *Barker Painting Co.*, 227 App. Div. 585, 587.) As stated in *Kamenitsky* v. *Corcoran* (177 App. Div. 605, 607): '' The complaint must state facts which constitute a legal basis for the charge of compulsion or involuntary payment, so that the court can see that the pleader's conclusion of law is justified.''

I hold that the allegations of the moving parties are entirely insufficient in law to constitute duress.

The Surrogate further holds that the moving papers are entirely insufficient in their charges of fraud, either actual or constructive. These charges are evanescent and based upon mere surmise and conjecture. They rest upon the allegation that Mrs. Berle's objections to the account were false. No misrepresentation of fact is asserted. All through the proceedings involved here and in the subsequent proceedings in the Bishop estate before Surrogate DELEHANTY, Mrs. Bishop and Mrs. Falcke were represented by competent attorneys who were specialists in the law of estates. Upon their face the objections presented tenable issues for trial. Their falsity or truth would have been revealed if the executrices in that capacity or individually as beneficiaries of the Bishop estate had elected to proceed to trial. On the other hand they not only desired a compromise but strongly urged it.

Where a claim is settled it does not matter whether the claim '' was much or little, or for that matter good or bad. It is not necessary, in order to uphold a compromise agreement based upon a surrender or composition or compromise of a claim, that the claim should be a valid one, or one that can be enforced at law, provided it be made in good faith.   *   *   *   Courts from the earliest times have favored compromises of *bona fide* disputes and have held agreements therefor to be founded upon good consideration irrespective of the validity of the claim which was compromised.'' (*Minehan* v. *Hill*, 144 App. Div. 854,

858, *supra.*) It was stated by Judge BARTLETT in *Sears* v. *Grand Lodge A. O. U. W.* (163 N. Y. 374): "Compromises of disputed claims fairly entered into are final, and will be sustained by the courts without regard to the validity of the claims."

Much effort is spent by counsel for the applicants here in an attempt to show that Mrs. Berle concealed the fact that she had acquiesced in the acts and conduct of her father in the management of the trust estate. Such contentions do not constitute a charge of actual or constructive fraud. Moreover, the admitted correspondence between Mr. Rosenberg and Mr. Fletcher, the attorneys for Mrs. Bishop and Mrs. Falcke, just prior to the conclusion of the settlement, shows that the charges of acquiescence and consent on the part of Mrs. Berle in the acts of her father were carefully considered in the making of the compromise. Certainly the present allegations could never constitute a basis for reopening the decree on the ground of newly discovered evidence. (*Collins* v. *Central Trust Co. of Rochester*, 226 App. Div. 486.)

The applicants further contend that they did not understand the nature of Mrs. Berle's claim, that it was never explained to them and that they were not adequately represented or were unable to obtain independent advice in the making of the settlement and that the agreement resulted from an overreaching. These allegations are again insufficient. They have no foundation in fact. The undisputed facts are to the contrary. The applicants were represented, as stated above, by successive firms of competent attorneys. At the initiation of the proceeding, the executor and executrices appeared by Messrs. Allin, Tucker & Allen, of which the executor, Mr. Allin, was a partner. They continued to act until October, 1937. On November 5, 1937, Messrs. Rosenberg, Goldmark & Colin were substituted as attorneys for the executrices and Mr. James M. Rosenberg of that firm became their active counsel in the accounting proceeding. He continued to act for them until about March 15, 1938. During this period and as far back as December 12, 1935, the executrices also retained as their separate counsel, Messrs. Davis, Polk, Wardwell, Gardiner & Reed. While no formal notice of appearance was filed by that firm in the accounting proceeding, Mr. Walter D. Fletcher of that firm continued as their counsel and from time to time advised them on estate matters until the consummation of the settlement and the entry of the decree of the Surrogate. Upon this phase of the case it is of no importance that Mr. Fletcher represented them indi-

vidually and not as executrices since their pecuniary interests as beneficiaries under the will of Mr. Bishop were very substantial in amount.

The agreement of compromise itself belies the contention of the moving parties that its terms were never explained to them. The agreement specifically recited: " Whereas, the executors have considered the said claim and the said objections and the facts upon which the claim and said objections are based and being fully advised in the premises desire to compromise and settle Mrs. Berle's claim and the pending litigation with respect thereto; * * *.'' There can be no question that the form of the agreement and its contents were fully explained to Mrs. Bishop and Mrs. Falcke by the attorneys who were then acting for them. In *Pimpinello* v. *Swift & Co.* (253 N. Y. 159), the rule is stated: " If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was, equally negligent; in either case the writing binds him." This rule was followed in *Matter of Stone* (272 N. Y. 121), *Matter of Schoenewerg* (277 N. Y. 424), and *Matter of James* (173 Misc. 1042, affd. 262 App. Div. 703, affd. 287 N. Y. 645).

The terms of the settlement agreement were also the subject of inquiry by the very competent and experienced referee who, in his report, recommended its approval by the Surrogate.

I hold that no legal ground has been alleged for the vacatur of the decree based upon fraud, actual or constructive, or overreaching.

The laches and acquiescence of the applicants further constitute a bar to the reopening of the decree. A person feeling aggrieved, where there are proper grounds for opening and vacating a decree, must proceed promptly and without delay in initiating proceedings for such vacatur. A delay of more than four and one half years, as in this case, is of itself sufficient to defeat the application. (*Matter of Niles,* 113 N. Y. 547; *Matter of Hawley,* 100 N. Y. 206, *supra; Matter of Hoes,* 119 App. Div. 288; *Matter of Gilford,* 155 Misc. 339, affd. 247 App. Div. 782, *supra; Matter of Sielcken,* 162 Misc. 54, *supra; Matter of Illfelder,* 136 Misc. 430, affd. 232 App. Div. 740.)

Finally, the applicants are barred from the relief sought upon the ground of estoppel. The principles laid down and applied by Surrogate DELEHANTY in *Matter of Gude* (150 Misc. 56; 151 Misc. 59) would alone be sufficient to deny the entire application because of estoppel against the applicants. These two decisions were affirmed, without opinion, by the Appellate Division

in 242 App. Div. 609. In that proceeding a party petitioned to vacate a decree settling the account of the trustees. The basis of his application was that his signature and his assent to the terms of a stipulation withdrawing objections filed to the account and providing for an adjustment of the claims of the objectants were induced by equitable duress. The stipulation of settlement was expressly assented to by the attorneys for the trustees and by the attorneys for all other parties. The decree which was ultimately entered in that proceeding settled the account of the trustees and established six separate trust funds for the benefit respectively of the persons or groups who had filed objections. Only one of the six persons or groups interested was charged with duress by the moving party. Only one of such trust funds was for the benefit of the person so charged with duress.

Surrogate DELEHANTY there held that the settlement evidenced by the stipulation and the decree was an integral whole and that duress practiced by one of a number of parties interested was not sufficient as a basis to invoke the power of the court to set aside the decree. He said in his original decision: " Since the interests of the person charged with the duress and the interests of the other parties to the settlement are not joint the latter may not be charged with responsibility for the conduct of the former. * * * The settlement here made by all parties in interest having separate rights was as a settlement and adjustment as much an integral whole or *res* as is a will. It follows that the duress here charged against a single party may not be attributed to nor permitted to affect the rights of other parties to the settlement.

" Since the settlement is an integral whole, the attack made upon it, limited as it is to duress by a single party to it, must fail as a whole." (150 Misc. 56, 59.)

Upon the reargument of the motion to dismiss (151 Misc. 59, 62), the Surrogate amplified the reasons for applying estoppel by his statement: " What clearer basis to estoppel can exist than is inherent in the very circumstance that a party to a contract, claiming to be a victim of equitable duress, signs and interchanges contracts with other parties known by him to be innocent of wrong and thereby leads them to waive their legal rights upon the credit of his supposed concurrence in what was then being done. * * * He says that he was then under the pressure of duress. He did not disclose that fact to any of the parties to the agreement of settlement and concededly none of them knew anything of it, save the single person charged

with producing it. \* \* \* Not having then spoken he is estopped ever to speak to their detriment. If wrong has been done he may not avoid the consequence of that wrong to him by wronging parties to the settlement concededly innocent of wrong, who concededly acted upon his apparent consent to and participation in what was done.''

In the pending proceeding, in addition to Mrs. Berle, the person against whom the claim of duress has been made, there are four charitable legatees under the will of Mr. Bishop whose rights and interests were directly affected by the compromise agreement. They contributed the sum of $257,500 to the settlement out of their shares of the estate. No charge or claim of duress is made by or against any of these charitable legatees. As in *Matter of Gude* (*supra*) the claim here is made against only one of the six persons vitally interested in the controversy. Mrs. Bishop never revealed to them in the period of negotiations the charges she now makes against her daughter. The interests of the charities now settled by the decree cannot be disturbed. The charges against Mrs. Berle may not be permitted to affect their rights or to subject them to any hazard by way of a higher surcharge which might result from a relitigation of the objections originally filed to the account. The compromise evidenced by the agreement was an integral whole and the attack upon it based upon the duress of a single party to it must fail as a whole.

Further grounds for the denial of the application because of estoppel and acquiescence of the parties are present in this estate. One of the provisions of the settlement agreement required that its approval be obtained in an accounting of the executor and executrices in the Cortlandt F. Bishop estate. That proceeding was pending before Surrogate DELEHANTY. Formal application for approval of the settlement was made upon notice to all of the parties interested in the Bishop estate. A hearing was held by Surrogate DELEHANTY for the purpose of inquiring into the propriety of the settlement, and his intermediate decree of approval was made on July 6, 1938. Mrs. Bishop and Mrs. Falcke in their capacities as executrices were represented by the firm of Larkin, Rathbone & Perry. It is significant also that along with all of the other attorneys for the interested parties, the attorneys for the applicants consented in writing to the entry of the intermediate decree.

Thereafter in the Bishop accounting the executrices set forth the completion of the settlement by the payment of money and the conveyance of properties. Their accounts were approved

by the decree judicially settling them made by Surrogate DELEHANTY on July 31, 1939. No question of duress or fraud or any of the grounds alleged here were raised by the executrices. Complete acquiescence was thus shown.

Further acquiescence is shown by a subsequent proceeding in the Bishop estate involving the final adjustment of the accounts of the executrices, the award of their final commissions and the account of the trustees. No question was raised therein as to the validity of the compromise. This proceeding was initiated in 1941, three years after the judicial approval of the settlement in this and in the Bishop estates. The executrices were there represented by a new and competent attorney, former Supreme Court Justice CHARLES H. KELBY. That proceeding was terminated by a decree dated June 15, 1942.

The Surrogate, therefore, holds that the parties are estopped from reopening the decree and settlement by their active and long-continued acquiescence.

One other question raised by counsel for the applicants requires determination by the Surrogate. Counsel contends that the settlement agreement was void under section 19 of the Decedent Estate Law because there was imposed a legal requirement that as a condition precedent to approval, the Surrogate or the referee was required to take proof of the facts. That contention is groundless. The settlement agreement here was not one brought under section 19 of the Decedent Estate Law. That section, as strongly indicated in its title and context, applies only to the compromise of controversies " arising between claimants to property or estates where the interests of infants, incompetents or persons unknown or not in being are or may be affected ". (*Callaghan* v. *Corbin,* 255 N. Y. 401; *Fisher* v. *Fisher,* 253 N. Y. 260.) None of the members of that class was interested in either the estate of the testatrix here involved or in the estate of Cortlandt F. Bishop.

Long before the enactment of the predecessor sections of section 19 by chapter 419 of the Laws of 1919, compromises of controversies by agreements between adults or corporations were sanctioned by the courts. Such settlements might be made even on the stipulation of the attorneys for the parties within the authority conferred upon the attorneys. The same practice as to the settlement of family and estate disputes is continued today and thousands of disputes in estates have been settled by writings executed by the parties without invoking the provisions of section 19.

Incidentally, the provision for the taking of testimony under that section is not mandatory. Where the rights of infants or incompetents or unknown or unborn persons are involved, they are the subjects of special inquiry by the Surrogates and the Supreme Court. The infants or incompetents are represented by a special guardian or guardian ad litem. In almost every case the taking of testimony is unnecessary, particularly in the construction of wills where questions of law only are involved. Since 'the agreement here exclusively involved the rights of adults and charitable corporations, section 19 had no application.

The motion to dismiss the application of the moving parties is granted for all of the reasons hereinabove set forth.

Submit order on notice dismissing the application to vacate the decree and the settlement agreement accordingly.