464 P.2d 620

In the Matter of the ESTATE of Willie Hale COHEN, Deceased.
Jackie COLE, Appellant,

v.

Max A. COHEN, Appellee.

No. 9766–PR.

Supreme Court of Arizona,
In Banc.

Jan. 30, 1970.

John J. Dickinson, Phoenix, for appellant.

Lewis, Roca, Beauchamp & Linton, by Charles Crehore and John P. Frank, Phoenix, for appellee.

McFARLAND, Justice:

The appellant, Jackie Cole, petitioned the Maricopa County Superior Court to vacate an order of distribution of the estate of Willie Hale Cohen. The beneficiary of the order is the appellee, Max Cohen. The Superior Court dismissed the petition and, on appeal, the Court of Appeals affirmed. Cole v. Cohen, 9 Ariz.App. 560, 454 P.2d 878. Appellant now petitions this Court for review. The sole question presented is whether the trial court erred in dismissing the petition to vacate.

· Willie Hale Cohen died on October 11, 1964. Her original will, dated September 14, 1960, gave substantially her entire estate to her husband, Max A. Cohen, the appellee. However on June 29, 1964, the decedent executed a handwritten document, dividing her estate equally between the appellee and Jackie Cole, the appellant. Max Cohen was designated executor in both documents and he tendered both documents to the court asking that the proper one be admitted to probate. Jackie Cole, through her attorney, filed a petition for probate of the 1964 will and Max Cohen, by his attorney, filed a contest of the later will, claiming undue influence.

The parties then entered into private negotiations for the purpose of settlement. Jackie Cole was represented by an attorney other than the one she originally employed, but on her orders he was excluded from the negotiations and his work was limited to reviewing the various settlement papers. An agreement was nearly reached but there arose a dispute as to legal fees for Jackie Cole's original attorney and, as

a result, she refused to execute the final papers. With the matter in this posture, Max Cohen petitioned the Superior Court for a hearing to determine the proper disposition of the case. In addition to the points of mutual agreement and the one disputed item, the petition contained the following paragraph:

"Neither of the parties are informed as to the true size of the Estate of Willie Hale Cohen, which depends primarily upon the valuation of the closely held foreign corporation and in turn the valuation of oil leases held by that corporation."

On December 18, 1964, a hearing was held which resulted in a settlement, Jackie Cole receiving $55,000, a diamond ring valued at $7,000, payment of her original attorney's fees and an agreement by Max Cohen that he would pay any tax liability if such was incurred by Jackie Cole. At the hearing Max Cohen gave the following testimony, which was uncontradicted:

"Q. Now, with reference to the estate of your deceased wife, as I understand that you have advised Jackie Cole and Jackie Cole is aware that the fact that the estate does consist, in part of some approximately seventy shares of stock in American Tel and Tel Company, is that correct?

UNIDENTIFIED WITNESS: The number is approximately 2000 shares.

MR. SCOVILLE: Oh yes, pardon me.

A. That is right.

BY MR. SCOVILLE:

Q. They are worth about $70.00 a share, apparently?

A. That is true.

Q. And that other or anything else of any substantial value, might consist of some jewelry and a half of the stock of the company call WILCO which owns some oil leases in the State of Kansas?

A. That is right.

Q. Now, have you made any representations to Willie [sic] Cole, as to the value or the exact nature, extent and size of the total of Willie Cohen, estate?

A. No.

Q. Do you, in fact, know now or have any ideas as to what the WILCO or interest in the shares of the capital stock of WILCO OIL, that is, that holds these oil leases, what it is worth?

A. No, I do not.

Q. Are you prepared to go ahead with the settlement immediately, this afternoon on that basis?

A. That is right."

His testimony that he made no representations to Jackie Cole was verified by her own testimony:

"Q. Now as I understand, it is correct as stated by Mr. Max Cohen, that you have arrived at a conclusion to dispose of all of your right, title and interest in the estate of Willie Hale Cohen, to Max A. Cohen, for the sum of $55,000.00 in cash, is that correct, and the diamond ring, pardon me?

A. Yes.

Q. At no time has Mr.—do I understand has Mr. Cohen been able to give you, nor has he given you any representation as to what might be the exact nature and size and extent and value of the whole estate, as it might ultimately be appraised? This, he has not represented to you?

A. No.

*　*　*　*　*　*"

"Q. One other question, Mrs. Cole, one other question. Mrs. Cole, early in this matter and before you were represented by counsel, on occasion you talked to me a time or two, is that correct?

A. Yes.

Q. And you are not acting with reference to any representation made by me, as to what this estate might or might not be worth, is that correct?

A. Yes.

Q. And as a matter of fact, I believe it is true, is it not, I told you I had

no way of knowing until perhaps, oil engineers made an appraisal of WILCO and things of that kind?

A. That is correct."

As a result of this hearing the Court, on December 30, 1964, entered the following Order:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Jackie Cole, has, in open court, bargained, assigned, transferred and conveyed all of her right, title and interest in the estate of Willie Hale Cohen for the consideration hereinabove recited.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in all further proceedings with respect to this estate, no notice is required to be given to the said Jackie Cole, same having been waived in open court.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that by virtue of the assignment hereinabove referred to, upon any subsequent distribution of this estate, distribution of any part of the estate to which Jackie Cole may have been entitled shall be made to Max A. Cohen or as he shall direct."

On January 7, 1965, the second will was admitted to probate and an order for distribution was filed on March 25, 1966. On August 17, 1966, Jackie Cole filed her petition to vacate the order of distribution, a year and eight months after the order terminating her rights in the estate. Her grounds for opposing distribution are that her assignment to Max Cohen was made under duress and that Cohen had defrauded her by misrepresenting the value of the estate and by concealing assets.

■ Although the petition, from which this appeal is taken, is entitled as being directed against the 1965 order for distribution, its main thrust and objective is to set aside the settlement agreement and order. Therefore it is, in fact, a motion to vacate the order of settlement under Rule 60(c), Rules of Civil Procedure, 16 A.R.S., and has been briefed as such by counsel. This Court, on numerous occasions, has held that the grant or denial of such motions "* * * is within the sound discretion of the trial court and its action will not be disturbed by this court except for a clear abuse of discretion. Brown v. Beck, 64 Ariz. 299, 169 P.2d 855; Thomas v. Goettl Bros. Metal Products, 76 Ariz. 54, 258 P.2d 816." Eldridge v. Jagger, 83 Ariz. 150, 317 P.2d 942.

Jackie Cole seeks to repudiate her own sworn testimony, given at the 1964 hearing, that neither Cohen nor his attorney made any representations to her and that she was aware that they had no way of knowing the true value of the estate until an appraisal could be made.

■■ In Adams v. Bear, 87 Ariz. 288, 294, 350 P.2d 751, 755, this Court stated that it is "* * * a general rule that a party is bound by his judicial declarations and may not contradict them in a subsequent proceedings [sic] involving the same parties and questions." This is the doctrine of judicial estoppel which is thoroughly discussed in Martin v. Wood, 71 Ariz. 457, 229 P.2d 710, where we held:

"The doctrine of judicial estoppel is equally applicable to the case at bar. The parties in the guardianship proceeding and in the instant case are the same; and the questions involved are identical, namely the mental capacity of Ida Grant. Appellant swore, in both her petition for guardianship and in the guardianship proceeding, that Ida Grant was on June 30, 1948, and for two years prior thereto, mentally incompetent. Thereafter, in the lower court, in the instant case appellant proceeded to do an 'about face' by testifying that her petition and former testimony were untrue and that Ida Grant was competent on February 9, 1948, the date the deed in question was executed. Appellant will not be allowed to take such a contrary position to the prejudice of appellee."

This doctrine has been worded as follows:

"In applying the rule of judicial estoppel it has been held that a plaintiff who

has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention, and it also prevents a person from assuming a position in one court entirely different from, and inconsistent with, that taken by him in another court or proceeding with reference to the very same matter or thing." 31 C.J.S. Estoppel § 117, p. 626.

It is true that duress may vitiate the effect of the doctrine, Cagle v. United States Fidelity and Guaranty Co. (Tex.), 386 S.W.2d 149, writ of error den., 389 S.W.2d 945, but the allegations of duress here are woefully weak. Most of her allegations are subjective beliefs. For example, from conversations with others she knew Max Cohen to be a man of violence; that she believed he had once shot a woman; that she believed he had served time in jail; that she believed he had once been in the "rackets" and that he had stated to her "We don't want you in Wilco; that's a family company", in such a tone of voice that she believed it to be a threat to her well-being. On another occasion he said to her:

"Settle this thing. If I have to fight, I'll fight, and I don't think you want to fight. I'm not an amateur, and I am sure you won't be the winner. You won't like the way I fight. I can be mean."

This statement is equally consistent with a threat of a legal fight as with a physical confrontation.

In Dunbar v. Dunbar, 102 Ariz. 352, 429 P.2d 949, this Court adopted the Restatement definition of duress. We there said:

"* * * We feel that a proper statement of the applicable law is set forth in the Restatement of the Law of Contracts as follows:

'§ 429. DEFINITION OF DURESS.

'Duress in the Restatement of this Subject means

'(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

'(b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement.'

"The test of what act or threat constitutes duress is determined by considering whether the threat placed the party entering into the transaction in such fear as to preclude the exercise by him of free will and judgment. And see Restatement of Contracts, § 492, Comment (a).

"Settlements such as are involved herein must be measured and determined in the light of the facts and surrounding circumstances. *By definition, an act or threat to constitute duress must be 'wrongful.'* * * *

"* * * *It is not duress to declare an intention to resort to the courts for the purpose of insisting on what one believes are one's legal rights.* Kaplan v. Kaplan, 25 Ill.2d 181, 182 N.E.2d 706." [Emphasis added]

There isn't the slightest indication that either of the two statements by Cohen were "wrongful" other than Jackie Cole's own conclusion that his tone of voice was threatening. The other allegations were her own subjective beliefs. It is apparent that the duress alleged here consists of the appellant's state of mind rather than hard facts.

A somewhat similar case, In re White's Estate, 182 Misc. 223, 46 N.Y.S.2d 917, aff'd In re Bishop's Estate, 268 App.Div. 759, 49 N.Y.S.2d 275, appeal dismissed, 293 N.Y. 767, 57 N.E.2d 845, also involved an attempt to set aside an estate settlement agreement on the grounds of fraud and duress. As in the instant case, the movant set

forth statements made to her by third persons which put her in fear of the party charged with the duress. The court peremptorily disposed of these saying:

"These allegations are based upon hearsay through two deceased persons and are flimsy and irrelevant. The alleged apprehension of the husband and the concern of the sister are futile to support any charge of duress exercised upon Mrs. Bishop by her daughter." Id. 46 N.Y.S.2d at 922.

The court continued:

"Threats made as to unrelated matters many years before a contract is entered into and neither directly or indirectly connected with such contract are not duress. Nor does a state of mind, such as fear, which can never be the subject of a contradiction because it rests upon the subjective opinion of the person who asserts it, constitute coercion where the charge of coercion is not founded upon acts which were exercised upon the victim by the party charged with duress. Despite the reasons which Mrs. Bishop may have had in her mind for entering into the settlement, there is nothing in the allegations as to the conduct of Mrs. Berle which would constitute duress or fraud on her part.

"Under the rules applicable to duress where the facts are not disputed, the question, whether admitting them all, they amounted to duress is a pure question of law. Glicman v. Barker Painting Co., 227 App.Div. 585, 587, 238 N.Y.S. 419, 421. As stated in Kamenitsky v. Corcoran, 177 App.Div. 605, 607, 164 N.Y.S. 297, 299: 'The complaint must state facts which constitute a legal basis for the charge of compulsion or involuntary payment, so that the court can see that the pleader's conclusion of law is justified.'

"I hold that the allegations of the moving parties are entirely insufficient in law to constitute duress." Id., 46 N.Y.S. 2d at 923.

It is significant that nowhere is there any showing that Jackie Cole, in the many months from the inception of settlement discussions to the filing of her petition, made any attempt to convey her fears to the court or to her attorneys. Petitioner was represented by able counsel of her own choice who would have been able to protect her against any unfair tactics. Instead, she excluded her attorneys from any active participation in settlement negotiations. Moreover, at the hearing, she proceeded to conclude the settlement against the better judgment of her attorney as indicated by this testimony:

"Q Mrs. Cole, you are entering into this settlement contrary to my advise [sic] and counsel, are you not, as an attorney?

"A Yes."

■ In summary, Jackie Cole personally negotiated a settlement with Max Cohen, testified in open court that no representations had been made to her, without mentioning duress, concluded the settlement contrary to her attorney's advice and accepted the benefits. She then waited for some twenty months before bringing the matter to the attention of the court and then based on flimsy allegations. Every equitable consideration militates against granting her relief. In fact, to do so would set a precedent virtually destroying the sanctity of judgments, decrees and orders of the court.

In view of the foregoing we are satisfied that the trial judge did not abuse his discretion in dismissing the petition.

The decision of the Court of Appeals is vacated. The Order of the Superior Court is affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.