468 P.2d 604

**STATE of Arizona, Appellee,**

v.

**Charles Eddie BRIDGES, Appellant.**

**No. I CA–CR 190.**

Court of Appeals of Arizona,
Division 1,
Department A.

April 30, 1970.

Rehearing Denied May 27, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Special Asst. Atty. Gen., for appellee.

Arthur W. Vance, Jr., Yuma, for appellant.

Charles Eddie Bridges, in pro. per.

STEVENS, Acting Presiding Judge.

The basic issue before this Court is whether Charles Eddie Bridges, herein referred to as the defendant, entered his plea of guilty voluntarily with an understanding of the nature of the charge and the consequences of the plea. Further questions are presented as to whether the defendant pled to an offense which had not been committed and whether the defendant was properly represented before the trial court at the time of plea and at the time of sentence. In addition to the brief filed by counsel, the defendant filed a brief in the Court of Appeals. The defendant had received some college education.

In May 1968 the defendant was serving a sentence in the Yuma County Jail, he having theretofore pled guilty to misdemeanors. At that time Eugene Alvarez was a Deputy Sheriff. Alvarez's duties included feeding the inmates of the jail. The defendant worked with him, helping in the feeding of the inmates, and in this responsibility enjoyed the status of being a "trusty." The defendant escaped from jail on the 15th of May. He came to the attention of the Yuma County Sheriff's Department at about 10:20 P.M. on the evening of 16 May. Two deputies discovered him in the yard of the Bingham Equipment Company. We are not informed as to the hour that the last employee of Bingham Equipment left the premises, so the record is silent as to whether the last employee left in the daytime or in the nighttime.

The report which was written by one of the deputies states, in part:

"* * * as I passed the victims place of business I saw the suspect at left in the yard at the rear of the building. I returned to the building and noticed a vehicle parked next to the north side of the building and that the large front gate was open. I thought it may be one of the employees working late so decided to check him out. I pulled into the yard past the gate and we both got out. We did not see the susp. so I walked around to the rear of the building * * * As I rounded the corner of the building at the rear I noticed the suspect walking rapidly toward the fence at the east end of the property. I ran up until I was directly behind him and he ducked behind two large tractor tires stacked by the fence. I told him to come out and he complied I ask him his name and he gave me the name of LANE I ask him what he was doing there and he stated he was working there. We went back to the patrol car and noticed his hand was bleeding. I looked around and saw the glass in the foremans office had been broken. I then placed the suspect under arrest informed him of his rights and placed him in the back of my patrol car.

"We then checked out the area and found a large wrench lying outside the bathroom on the floor. Stanley (the other deputy) who was standing by the car watching the suspect saw him drop some keys on the floor of the car. I then ask the suspect to get out of the vehicle and then saw two keys lying on the floor. One key was to the gas pump of the victims business and the other key was to the Ramada Inn room #208. * * * We then found the lock to the large gate lying on the ground. The suspect vehicle was still running. A later check showed this vehicle belong to the victim #2 (Mike Avsharian) it had been stolen from his place of business (the hour is not stated) We then found that the large plate glass window in the front of the building was also broken out. The mgr. was called * * * The mgg. (sic) checked out the cash boxes in the office and found nothing to be missing. * * *

"Further investigation showed that the suspect gained first entry into the yard by prying off the screen of the bathroom window at the north side of the building. A trace of dirt was on the stool where he stepped down and a paper holder was torn off the wall. He then went to the tool shed and there he picked the large 1 and $11\frac{4}{16}$ Proto wrench off the wall from where it was hanging along with several wrenches of the same style but different sizes evidently with the intention of prying the lock off the gate, however he layed the wrench down and broke out the glass in the door of the foremans office and there he pulled some books out of the top left drawer and threw them on the desk, he then found the (nine) keys and went out and opened the gate. He then evidently went to the front of the building and broke out the front window to gain entrance into the main building. A lug wrench was found in the front seat of the suspects car which was probably used to break this glass as it is very heavy plate glass. The suspect foot

prints were in front of window and a photo was taken. He then probably went around to the south side and opened the small gate as that lock was also removed and lying on the ground. He then went into the repair yard where writer then saw him. A search of the area to find the 9-Keys was made but they were not found until the suspect was brought to the jail and then they were found stuffed under the back seat of the patrol car.

"The suspect man had been drinking as I smelled liquor on his breath but he was very steady on his feet and his speech was distinct and in writers opinion was not in any way drunk. * * *

"Writer then took subject to the jail and booked him for burglary. * * *

" * * * A charge of GTA (grand theft, auto) is pending at this time. Susp. checked in at the Ramada at 1:39 PM on 5/16/68 under the name of LANE address 1717 10th St., Yuma Veh. Lic. PVA667 Cal. * * *."

On 17 May a complaint was filed in the Justice Court charging the defendant with the crime of burglary. This was an "open end" charge, that is, the charge did not charge or specify either burglary in the first degree or burglary in the second degree. The defendant being without funds, the Justice of the Peace contacted a Judge of the Superior Court who designated an attorney to represent the defendant. We will refer to this attorney as attorney number one. The preliminary hearing was held on 23 May, the defendant being present and represented by attorney number one. The defendant was bound over to the Superior Court. There was no reporter's transcript of the preliminary hearing.

On 24 May an information was filed in the Superior Court charging the defendant with the crime of burglary, again an open end charge. On 28 May, when the matter came on for arraignment, attorney number one was permitted to withdraw for the reason that he planned to leave Arizona to practice elsewhere. He left shortly thereafter. On 28 May the trial court emphasized the seriousness of the crime, explaining the differences in the length of time of imprisonment upon conviction of either daytime or nighttime burglary. The defendant was told of the other consequences upon conviction of a felony and apprised of his right to counsel. The defendant expressed his desire to be represented by court appointed counsel, and attorney number two was appointed. The arraignment was continued to a later date.

On 4 June the arraignment was conducted and the defendant entered a plea of not guilty. The trial was set for 28 June. Prior to the fixing of the date for the trial, a suggestion was entered in the record by attorney number two that he needed some time to secure out-of-state records to see whether he would ask for a Criminal Rule 250, 17 A.R.S., hearing. The purpose of such a hearing is to determine whether the defendant at the time of the hearing and at the time of the trial " * * * is insane or mentally defective, to the extent that he is unable to understand the proceedings against him or to assist in his defense, * * *." No Criminal Rule 250 hearing was requested.

Prior to the appointed trial date, the defendant, attorney number two and the deputy county attorney, who up to that time had handled all of the matters in relation to the charges against the defendant appeared in court. The state moved to amend the information to charge burglary in the second degree. The defense did not resist. The record discloses that the court stated:

"the information may be amended by showing of the crime of felony, to wit: burglary in the 2nd degree.

"This was daytime burglary?"

to which the deputy county attorney replied:

"Yes, Your honor."

While the above may be construed as an affirmative representation that the crime was committed in the daytime, this Court is of the opinion that this was intended

merely as clarification as to what constituted second degree burglary. The record indicates that both the defendant and his attorney number two stood silent.

The defendant's present attorney, attorney number three, is highly critical of this record. He urges a misrepresentation to the court. He urges that by pleading guilty to burglary in the second degree the defendant pled guilty to a crime which the facts disclose was not committed. We will discuss these contentions later.

At the time of the entry of the plea of guilty, the trial judge addressed himself to the defendant and the defendant responded. Although the requirements set forth in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), were not applicable in this case, State v. Griswold, 105 Ariz. 1, 457 P.2d 331 (1969), in our opinion the procedure followed fully complies with Rule 11, Rules of Federal Criminal Procedure.[1] The inquiry by the trial court included the defendant's understanding that there had been "[a]bsolutely no representation or idea as to what the sentence or disposition of this matter is going to be." The defendant advised the court that no one had made any promises that he would "get off easy" or that "he would get more leniency from the judge or any thing of that kind." The defendant negated any threats, coercion or coercive conduct, and he acknowledged that his plea was his "own free and voluntary plea." In response to the question "Now, did you, in fact, enter this office with intent to steal?" the defendant replied, "Yes, Sir."

The trial court advised that there would be a presentence investigation together with a report which would be secured from the probation officer. Such a report was made which included a recitation as to a conference between the probation officer and the defendant.

It is our opinion that affirmative statements by a person in open court in response to questions asked by a trial judge constitute judicial declarations. While a defendant in a criminal case, conceivably, may not be subject to judicial estoppel as one would be in a civil case, see Cole v. Cohen, 105 Ariz. 337, 464 P.2d 620 (1970), it is our opinion, in the face of the record made at the time of the entry of the plea, that it was the affirmative duty of the defendant to show that the essentials of a voluntary plea were lacking. In our opinion, the defendant is required to present more than mere allegations that he labored under some misapprehension as to either fact or law to overcome the declarations made in open court. The record does not disclose facts which support the defendant's position. See United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); United States v. Young, 304 F.Supp. 1027 (W.D.Penn.1969); United States v. Tivis, 302 F.Supp. 581 (N.D. Tex.1969); State v. Martinez, 102 Ariz. 215, 427 P.2d 533 (1967).

On the date set for sentence the deputy county attorney who had handled the case up to the point of the entry of the plea had left the office of the county attorney, or was about to leave that office, to engage in practice elsewhere. On the sentence date the newly appointed county attorney, formerly a civil deputy, represented the State. The defendant was present with his attorney number two. The court had the advantage of the probation officer's report but had not seen the report of the deputy sheriff, quoted earlier in this opinion. The sentencing procedure was likewise handled with great care by the trial judge. When

---

1. A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea. As amended Feb. 28, 1966, eff. July 1, 1966.

attorney number two suggested that the defendant would like to relate matters to the court, the court responded:

"Well, I, of course, will always be glad to hear from the defendant but I will not require him to relate anything."

The defendant's statement to the court is as follows:

"I was just picked up in the yard of Bingham Equipment Company. There wasn't anything stolen. I guess I broke a window. I had been drinking that night and I don't remember the night too well myself, Your Honor."

Thereafter the county attorney read portions of the report of the deputy sheriff. The court reminded the defendant that the court had examined the defendant's FBI fingerprint record. This record disclosed two felony convictions and disclosed the name of the defendant to be Robert Joseph Lane. It will be remembered that the name Lane is the name which was given to the deputy sheriff at the time of the arrest of the defendant. The report disclosed a 1960 arrest and three-year sentence for larceny of an automobile and a 1965 two-year sentence for theft of a motor vehicle under the Dyer Act. The probation officer's report stated that the defendant admitted the two prior felony convictions.

After the court advised the defendant as to his examination of the presentence report and the fingerprint record, the court further stated:

"Enough to say, that you have already received a certain amount of leniency in this matter in that the County Attorney in charging you with this crime did not charge you as a second offender. It would have been very easy for the County Attorney, by alleging these prior convictions to have boosted the maximum of your sentence, even on the basis of daytime burglary, and the County Attorney did not do that. You plead guilty to the lower of the two degrees of burglary. As a result, I'm limited in the sentence that I can impose upon you, and I do feel that you have already received con-

siderable leniency. * * * Now, you realize, I'm sure, that with your record it isn't possible for me to grant you substantial leniency * * *."

And the court then pronounced judgment and sentenced the defendant to a term of not less than two years and not more than five years in the Arizona State Prison, the same to date from 17 May 1968, thus giving the defendant full credit for his period of incarceration following his arrest for the offense of burglary.

The record is silent as to any protest by the defendant or any request that he be heard further.

Shortly thereafter, the defendant, in person, gave notice of appeal. The notice of appeal stated, in part, that he entered his plea of guilty "under duress from the county attorney office in and for the county of Yuma in the form of a threat from the county attorney in charge of my case * * * At no time neither the facts or the law has proved that the defendant ever had intent to commit said crime." The defendant was accorded an indigent appeal. The record on appeal was furnished to him without cost and his present counsel, attorney number three, was appointed to process the appeal.

### THE RETURN TO THE TRIAL COURT

Shortly after the appeal was docketed, a motion was made on behalf of the defendant for a Superior Court factual hearing. It is our experience that at times before we have decided specific appeals, issues are raised which cannot be resolved by an examination of the four corners of the record before us, matters which can be classified as "post conviction" assignments. Examples of cases wherein we have followed this procedure are State v. Popejoy, 9 Ariz.App. 170, 450 P.2d 411 (1969), and State v. Turnbaugh, 10 Ariz.App. 179, 457 P.2d 719 (1969), review denied 4 November 1969, No. 9804-PR. The Arizona Supreme Court has used a similar procedure. State v. Linsner, 105 Ariz. 488, 467 P.2d 238, decided 2 April 1970, citing Griswold.

In the instant case an order was entered and the trial court conducted a hearing, entered a findings of fact and conclusions of law, ruled on exceptions and forwarded the record to this Court with its recommendations that the plea of guilty stand. Thereafter the filing of briefs was completed including a brief which the defendant filed in his own proper person.

## BURGLARY

It is urged that the defendant entered a plea of guilty to a crime he did not commit and that the plea cannot stand. This appears to be the major contention. It is urged that burglary in the daytime (burglary in the second degree) is not a lesser included offense to the crime of burglary in the nighttime (burglary in the first degree) and that the evidence does not sustain a daytime burglary. We are not able to agree with these contentions. The offense charged was the offense of burglary. A burglary in the daytime or a burglary in the nighttime is nonetheless a burglary. A.R.S. § 13–302, subsec. A. We analyzed this section, which was not changed in this respect by later amendments, in State v. Brady, 2 Ariz.App. 210, 407 P.2d 399 (1965), and we need not repeat that analysis. Our analysis has been upheld in principle by the Arizona Supreme Court in State v. Hunter, 102 Ariz. 472, 433 P.2d 22 (1967), wherein it was held that a burglary having been proven, the defendant must be found guilty of a daytime burglary (second degree) unless the evidence is sufficient to sustain a clear finding of a nighttime (first degree) burglary. See also State v. Sexton, 4 Ariz.App. 41, 417 P.2d 554 (1966).

At the hearing after the appeal, the then deputy county attorney who had handled the case up to and including the time of plea testified:

"* * * I do not believe that it happened in the daytime * * *."

and

"* * * In the opinion of the state there is very little question but what it happened in the nighttime."

At the hearing the county attorney stated to the court:

"* * * Maybe to simplify this, the state could stipulate that the facts of this case *indicate* that this was a nighttime burglary, and that the defendant has plead guilty to second degree or daytime burglary, and that the matter, that particular legal question be submitted for ruling." (Emphasis added.)

While it is true that the deputy sheriff states that the defendant was found on the premises in question after ten o'clock in the evening, in the nighttime, the report indicates a considerable amount of activity on the part of the defendant. It indicates that the defendant entered the premises more than once. It indicates that after entering the building he found the gate and gas pump keys, that he then left the premises, that he thereafter returned with the automobile which, according to the report, had been stolen, and that he left the car with the engine running in the vicinity of the gas pump. We do not have the hour that the last person left the premises of the Bingham Equipment Company. It could well have been during the daylight hours. The defendant testified that "the next morning," that is the morning of the offense, "that I went over to the Hofbrau and drank there until six o'clock at night." Again, this hour was in the daytime. We have no more specific facts before us and, applying the Supreme Court decision in HUNTER, we cannot say that at least the initial entry into the Bingham office was other than in the daytime. In connection with the above-quoted testimony of the defendant, we must remember that the sheriff's report states that the defendant checked in at a motel at 1:39 in the afternoon of the day in question.

We conclude that the state of the record before us sustains a plea of guilty to burglary in the second degree on each of two bases. First, the plea was to the

offense of burglary, and second, it is quite possible that there could be a doubt as to the hour that the defendant actually entered the building in question on the premises in question. In the event that it can be said that at the time of the entry of the plea of guilty the deputy county attorney made an affirmative representation to the court that the offense was a daytime burglary, we would not condone such a representation. Even though the burglary had in fact occurred during the nighttime, it is perfectly legal and technically proper to enter a plea of guilty to burglary in the daytime.

## INTOXICATION

 The defendant urges that he could not be guilty of the offense of burglary because he was too intoxicated to form the necessary intent to commit the theft, his intoxication resulting in a blackout. While voluntary intoxication is no defense to a criminal act, it may be considered in relation to the capacity to form an intent. A.R.S. § 13–132. The defendant informed his attorney number two of this contention, the attorney talked to the bar attendants and confirmed the fact that the defendant had been drinking. The degree of intoxication which these attendants observed was not brought out at the hearing. The report of the deputy sheriff, made on the night of the arrest, does not sustain the contentions of the defendant. The nature of the activities of the defendant on the premises in question gives strong circumstantial evidence, almost direct evidence, of an intent to commit theft.

## NO RULE 250 HEARING

 The defendant testified that when he returned from overseas service, where he sustained battle fatigue, he was hospitalized in the Valley Forge Hospital. This was the basis of the statement to the court at the time of arraignment requesting a later trial setting. Counsel desired to obtain out-of-state records. Attorney number two secured the hospital report. He testified that it disclosed that there was some evidence of minor psychiatric problems. The entire record discloses that the defendant was fully capable of understanding the proceedings against him and assisting in his defense. By asserting blackouts and excessive intoxication the defendant was claiming a form of amnesia. There was no indication that his memory would improve with time or treatment. Even in a homicide case, amnesia does not constitute a complete defense. See State v. McClendon, 103 Ariz. 105, 437 P.2d 421 (1968).

## HEARING IN MITIGATION

Criminal Rule 336 authorizes the court on its own motion, and on suggestion of the defendant directs the court to conduct a summary hearing in open court relative to the circumstances surrounding the offense. There is great latitude given to counsel as to whether such a hearing should be requested. Attorney number two advised the defendant that the trial judge would already have made up his mind beforehand and that he would give no heed to such a hearing. This may have been his means of advising the defendant that under the facts in the case possibly no useful purpose would be served.

The defendant urges that he believed that he would receive probation. He urges that Deputy Sheriff Alvarez, the jailer, had promised the defendant a job and a place to stay. Alvarez was called to testify, and he did testify that while the defendant was serving his misdemeanor sentence and before his escape, such an offer was made of a job. Alvarez further testified that after the escape and the defendant's subsequent charges that he, Alvarez, did not again speak to the defendant with reference to the possibility of employment.

 It is a matter of second guessing as to whether such a hearing should have been requested. It is conjectural whether the facts available could have been of benefit to the defendant. The defendant urged for the first time after the hearing had

been terminated and on argument in relation to the exceptions to the proposed findings of fact that there was an infirmity in the first of the two earlier felony convictions. He testified that he had been expressly denied the right to counsel. If the record in the sister State substantiated the position of the defendant, and there is no showing of this ever having been communicated to counsel or to the probation officer so that the record could be secured, then as the trial court observed it would have disregarded this first conviction. In State v. Reagan, 103 Ariz. 287, 440 P.2d 907 (1968), and subsequent cases, the rule has been firmly established that before the record of a prior conviction can be used to enhance punishment beyond the statutory maximum for the offense charged, it must be shown that the defendant was represented by counsel, or advised of his right to counsel and waived that right. See also Smith v. Eyman, 104 Ariz. 296, 451 P.2d 877 (1969).

■ As to the second previous felony conviction, one in the United States District Court, a conviction based upon a plea of guilty with counsel representing the defendant, the defendant attempted to contest the facts which were the basis of the charge. This would be a difficult undertaking. In any event, the prior convictions were not set forth in the information and could not be used to increase the punishment beyond the five-year statutory maximum for burglary in the daytime. Had the defendant been found guilty of a nighttime burglary with a proven prior conviction, he could have been sentenced for a period of not less than ten years and not more than life. This is brought out in the case of State ex rel. Corbin v. Court of Appeals, Division One, 103 Ariz. 315, 441 P.2d 544 (1968). A prior conviction, if valid, even though not alleged and proven, can be considered by the trial judge in fixing the terms of the sentence within the statutory limits of the offense charged under our indeterminate sentence procedure. Here the limits were not less than one year and not more than five years. See Ponds

v. State ex rel. Eyman, 7 Ariz.App. 276, 438 P.2d 423 (1968).

## PLEA BARGAINING

■ The defendant had the benefit of legitimate plea bargaining. The conviction in the United States District Court, though not alleged, could have been alleged and this potential was eliminated. The filing of a formal charge in relation to the theft of the automobile was eliminated. At the time of the alleged offense under A.R. S. § 13–663, subsec. A, par. 3 theft of a motor vehicle was grand theft and under A.R.S. § 13–671, subsec. A grand theft was punishable by a term of imprisonment for not less than one year and not more than ten years. After the date of the alleged theft of the motor vehicle, the statute was changed by Chapter 10 of the 1968 Session Laws. The offense remained a felony. This could be enhanced with the formal allegation and proof of a prior conviction. There were pending potential misdemeanor complaints as well. The plea bargaining resulted in a judgment of guilt to the offense of burglary with a maximum sentence of five years. Reasonable plea bargaining is approved in Arizona. Our Supreme Court has approved proper plea bargaining. Three recent cases are: State v. Davis, 105 Ariz. 498, 467 P.2d 743, decided 7 April 1970; State v. Carpenter, 105 Ariz. 504, 467 P.2d 749, decided 8 April 1970; and State v. Waltman, 105 Ariz. 520, 467 P.2d 914, decided 16 April 1970. We do not have before us a conviction of an offense which was not sustained by the facts as was the situation in Peterson v. Jacobson, 2 Ariz.App. 593, 411 P.2d 31 (1966); State v. Singh, 4 Ariz.App. 273, 419 P.2d 403 (1966); see The Schooner Hoppet and Cargo v. United States, 11 U.S. (7 Cranch) 389, 3 L.Ed. 380 (1813).

## COUNSEL

■ We are of the opinion that the defendant was well represented by counsel. The defendant's subjective belief that he would secure probation had no basis in fact or promise. He admitted that his at-

torney number two, before entering the courtroom on the day of sentence, indicated to the defendant that, based upon the attorney's experience with similar cases, the attorney would expect the defendant to "get some time." The only possible criticism of attorney number two is his statement to the defendant that the trial judge would have made up his mind and that a hearing in extenuation would be a waste of time. This was undoubtedly stated to the defendant not as a statement of fact but to persuade the defendant that he had nothing to gain by such a procedure.

After a review of the entire record, and we have considered all the points even though some are not herein discussed, the judgment and sentence are affirmed.

CAMERON and JACOBSON, JJ., concur.