Burke, J. (dissenting).
This is a proceeding to dismiss objections based upon the existence of waivers of citation and consents to probate. The Surrogate denied the motion to dismiss and the Appellate Division reversed and granted the motion to dismiss the objections.
The order of the Appellate Division should be affirmed. The waivers and consents executed by appellants are binding and make them ineligible to file objections.
This court has no original jurisdiction. All its business is appellate review. The existing limitation upon these appellate powers affect the nature and the scope of the issues which the court is authorized to consider after the appeal is properly brought before it. The theory of the trial and the theory of the appeal below binds this court. It may not legislate remedies which do not have legislative sanction or which have not been even mentioned in the courts below.
The arguments made in this court and in the Appellate Division in behalf of the appellants were (1) the Surrogate was correct in concluding that the conduct of the proponent over a period of more than three years indicated its acquiescence in, and its assent to the filing of objections by the appellants to the probate of their brother’s will and (2) that the trust company and its attorney procured the signatures of the appellants to the waivers of citation and consent to the entry of the decree by overreaching and deception.
The issues raised by the appellants that they were induced to execute the waivers and consents to the probate by fraud and misrepresentation, and that proponent’s failure to mention or file the consents to probate for a protracted length of time, created an estoppel, were decided against the appellants by the Surrogate and these findings were affirmed unanimously by the Appellate Division. These questions are no longer open for review. The Appellate Division also found that there was no agreement to withdraw or cancel the appellants’ waivers and consents to probate. The majority agree.
*152 In this case by the terms of the original will, the residuary estate, which was substantial, was bequeathed to the two brothers equally. This was reduced to one quarter of the residue by the first codicil to the will. The second codicil bequeathed to the two brothers the deceased’s one-third share of real estate which he owned together with them. Their share is one quarter of a million dollars. The other legatees, in addition to the brothers who received legacies, are mostly residents of Switzerland, some of these are infant legatees and unknown persons. The will and first codicil were dated October 9, 1958 and the second codicil May 4, 1960. The decedent died on June 22, 1965, seven years after making the will and first codicil. There could be no undue influence exercised by people in Switzerland, and Mr. Jennings, the lawyer who drew the will, was not mentioned in the will. The second codicil reaffirmed the will and first codicil insofar as there were no amendments.
The evidence relied upon by the Surrogate and the Appellate Division is summed up well in the affidavit of the Trust Officer, Roger B. Cooper:
“ 2. I have read the affidavit of Ernest D. Prutiger dated April 9th, 1969, in the above entitled matter. Due to some of the misstatements contained therein, I am submitting this reply affidavit.
“3. In paragraph 4 of the affidavit it is alleged that I ‘ read ’ all of the Will and two codicils to Ernest Prutiger and his brother, Willard Prutiger, in the presence of ‘ another man from the bank ’, Warren Jennings, Esq., and Harold Evans, Esq., the Bank’s attorneys. This is not true. It is, and always has been the policy of our bank never to ‘ read ’ a will or to attempt to explain its contents to legatees as that would be preempting the function of the estate’s attorney and bad banking practice.
“ 4. Xerox copies of the will and codicils were furnished by both Ernest and Willard Prutiger by Warren Jennings at my office on June 24, 1965. After a general discussion of the will between Warren Jennings, and Willard and Ernest Prutiger, I recall that Mr. Jennings, after an appropriate explanation as to their purpose, produced the waivers and requested both of their signatures. After the waivers *153 were signed, Mr. Jennings requested Mr. Evans to take the acknowledgements of the signatures, which was done in my presence.
“5. It is completely untrue that I, or anyone at the meeting of June 24, 1965, represented to either of the Frutigers that the waivers which they had signed were anything else but a consent to probate the will of Walter Henri Frutiger.”
The Surrogate and the Appellate Division obviously held that the allegations set out in the affidavits and the testimony of the appellants were unworthy of belief. The finding of incredibility is not reviewable in this court.
The reason here for the disbelief is evident. The meeting at the bank had been requested by Willard. It lasted two hours — Willard and Ernest read the will and codicils. Ernest asked Mr. Jennings, an estate lawyer with 40 years’ experience, who was counsel to his father’s estate, to discuss the will of his brother, Walter. Willard admitted that he not only signed the instrument but also noticed the heavy print “ Waiver and Consent to Probate”. Ernest was not unfamiliar with waivers and consents, as he signed a similar waiver and consent in connection with his father’s will. He was well versed in business. He was secretary of the Chamber of Commerce of Coatsville, and manager of the Credit Bureau of Coatsville, Inc.
The theory that a different rule should govern waivers and consents sought to be reneged upon before the entry of a decree is baseless. Surrogate Bennett, the Chairman of the Commission on Estate Law, put this argument to rest in Matter of Sturges (24 Misc 2d 14) when he ruled logically that the nature and extent of the proof necessary to invalidate waivers of citation and consents to probate is the same, whether the challenge is made before the decree or after decree. The appellants’ burden of proof as they indicated at the trial is the same as the signer of any legal instrument. The signers are bound unless fraud, misrepresentation or coercion is proved. This is an ancient law. " Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. (Wigmore on Evidence § 2415.) If the signer could read the instrument, not to have read it was gross negligence; *154 if he could not read it, not to procure it to be read was equally negligent; in either ease the writing binds him. * * * 'So, if the party that is to seal the deed, can read himself and doth not, or being an illiterate or a blind man, doth not require to hear the deed read, or the contents thereof declared, in these cases albeit the deed be contrary to his mind, yet it is good and unavoidable.’ (Sheppard’s Touchstone, p. 56.) * * * In Hunter v. Walters ([L.R.] 7 Ch. 75, 82; 41 L. J. Oh. 175) Lord Hatherly said that the signer ' cannot affect not to know what he was doing; ’ and in the same case, James, L. J., said that the man ' who has made the representations ’ (that is, the man who signed the writing) ‘ must bear the consequences. ’ ’ ’ (Pimpinello v. Swift & Co., 253 N. Y. 159, 162-163.)
In Matter of Anderson (22 Misc 2d 662, 663) the court restated the settled law: ‘ ‘ Fraud, misrepresentation, coercion, or other ground tending to destroy the validity of a waiver must be shown and should be clear and convincing. There was no obligation on the part of proponents or their attorney to advise the object-ant of the nature and effect of such waiver. He is chargeable with knowledge of the contents and the legal effect of such waiver whether or not he availed himself of the advice of counsel at the time of the execution thereof.” (See, also, Matter of Moody, 22 Misc 2d 383.)
Both the appellants who were competent adults, not illiterate or blind or ignorant of the English language, admit that they signed the waiver of citation and consent to the entry of the decree. They concede that they received Xerox copies of the will and the codicils to read over at that time. The trust officer, who was believed, testified that they discussed the will and codicils with Mr. Jennings, who was the attorney for their father’s estate. The Surrogate and the Appellate Division found that the testimony of the appellants which was irreconcilable with that given by the trust officers and Mr. Evans, the attorney, is insufficient to establish any invalidity or any impropriety in the execution of the waivers (Matter of White, 182 Misc. 223, affd. 268 App. Div. 759; Matter of Freundlieh, 58 N. Y. S. 2d 679). Appellants, therefore, are charged with knowledge of the contents and the legal effect of such waiver whereby they formally consented to the probate of the will. (See Matter of Stone, 272 N. Y. 121; Matter of Schoenewerg, 277 N. Y. 424; Matter of *155 James, 173 Misc. 1042, affd. 262 App. Div. 703, affd. 287 N. Y. 645.)
Apart from the testimony in the record which supports these findings which are not reviewable in this court, Exhibits 1 and 2 in the case are headed in bold black type “ Waiver and Consent to Probate ’ ’. There could be no question that the appellants understood the objective nature of the instruments they executed. No proof of a refusal to disclose any fact was offered by the appellants. As the Appellate Division said “Whether the waivers and consents were filed with the probate petition or had been disclosed beforehand to respondents’ attorneys the respondents would have had to set them aside before contesting the will ”. The courts below have found they could not be set aside as no fraud, overreaching or misrepresentation in procuring the waivers was shown. This is to insure orderly procedures in the Surrogate’s Court. The Surrogate in this case pointed out (62 Misc 2d 166) that “ Of all instruments filed in probate proceedings, the greatest number must certainly be waivers of issuance of citation and consents to probate.” Waivers and consents are indispensable for the effective and inexpensive administration of estates of testators. It is for this reason that the Surrogate’s Courts have always insisted on clear and convincing proof of fraud or other grave conduct. Will contests are successful in less than 1% of the wills challenged. This is because experienced estate lawyers, such as Mr. Jennings, before drafting a will, assure themselves that the testator has testamentary capacity and is free from undue influence. The public policy of this State is to protect every citizen in his right to dispose of his property as he desires. The responsibility of every Surrogate is to carry out the intention of the testator and protect the estate against fabricated efforts to defeat the solemnly expressed intention of the testator by indefensible litigation at the expense of the estate.
The theory for the first time devised by this court sua sponte that the Surrogate in his discretion has the power before decree to treat the consents to the entry of the decree and waivers of citation which had been signed by the appellants and notarized by a lawyer as a stipulation was never advanced by any of the parties or the courts below. These legal documents are not mere stipulations between parties. They are furnished by the *156 clerk of the court in printed jurative form for use in probate proceedings. They are unilaterally executed and notarized.
The whim of these disgruntled legatees, annoyed that their brother left them only one quarter of a million dollars, instead of the entire estate, and chose to remember friends in Switzerland, does not justify the invention of an unargued, fallacious theory which will burden the estate, with further litigation. The appellants already have put the estate to unwarranted expense for reasons stated by them but found to be incredible. There is no provision of the Surrogate’s Court Act or any other statute or decision which empowers the Surrogate to exercise discretion to treat a waiver of a citation and a consent to the entry of the decree as a stipulation. In this case, this appellate court invents a doctrine without notice to counsel on a question which was never presented to the courts below.
The adoption of such a doctrine amounts to encouragement to barratry which will cost estates of decedents dearly, endorses vexatious litigation in the busy Surrogate’s Courts and creates disorder where there has been order ■— delay and expense where there has been prompt and effectual procedures. Preying on estates by way of litigation has been rejected by Surrogates for many decades. Matter of Bissell (57 Misc 2d 220) is not apposite. There a will contest was inevitable and the distributees were not given copies of the will. It is also at odds with the numerous Surrogate’s Court decisions which recognize the duty of the Surrogates to discourage litigious relatives from subjecting the estate to expenses in an effort to interfere with the disposition of the testator’s property according to his own free will and not their selfish interests.
It is also not applicable because this case has been fully tried on the issues raised by the appellants, namely: overreaching, deception and estoppel. The findings of the Surrogate that there was no fraud, imposition or estoppel have been affirmed. On this record there is no reason to tax the estate with more expense through a granting of another round to the objectants who failed to prove the case framed by them. The only just course, fair to the infant legatees and other legatees, and even to these misguided appellants, is to affirm the order of the Appellate Division dismissing the objections.
*157 Chief Judge Fuld and Judges Scileppi, Berg an, Breitel and Jasen concur with Judge Gibson ; Judge Burke dissents and votes to affirm in a separate opinion.
Order reversed, etc.