BENJAMIN KAMENITSKY, Respondent, *v.* THOMAS F. CORCORAN, Appellant.

First Department, April 5, 1917.

Duress —action to recover moneys paid on threat of defendant to cause municipal license to be rescinded — pleading — complaint not stating cause of action.

Action to recover moneys alleged to have been paid under duress. The complaint in substance alleged that the defendant is the owner of a saloon on a corner on which the plaintiff was duly licensed by the city of New York to maintain a newsstand, that no part of plaintiff's stand was located upon or abutted on the defendant's premises, but that the plaintiff for a period of twelve years paid a monthly sum of money to the defendant under the threat that if the money was not paid the defendant would cause the plaintiff's license to be taken away and would cause him to be ousted from the location. Complaint examined, and *held*, to state mere conclusions and not facts showing actionable duress, and that the defendant's motion for judgment on the pleadings should be granted.

It was not sufficient merely to characterize defendant's conduct as a threat, or to allege that the payments were made under duress. The complaint should state facts which constitute a legal basis for the charge of compulsion, or involuntary payment, so that the court can see that the pleader's conclusion of law is justified.

It is sometimes necessary to plead facts more or less evidentiary in order to avoid pleading mere conclusions.

A mere statement of intention to resort to the courts or to public officials, however unjustified, is not a threat in a legal sense.

*It seems*, that even if the first payment by the plaintiff were made under duress, the subsequent payments extending over a period of nearly twelve years were not equally paid under duress, in the absence of allegations of fact from which it appears that each subsequent payment was made under compulsion, or that they were made under protest.

SMITH, J., dissented.

APPEAL by the defendant, Thomas F. Corcoran, from a determination and order of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 17th day of November, 1916, reversing an order of the City Court of the City of New York which granted defendant's motion for judgment on the pleadings, and denying defendant's motion.

*Louis Lowenstein,* for the appellant.

*I. Maurice Wormser,* for the respondent.

SHEARN, J.:

The complaint attempts to set forth a cause of action to recover moneys paid by the plaintiff to defendant without consideration and under duress. Plaintiff alleges that defendant was the owner of a saloon located on a street corner; that plaintiff was duly licensed by the city of New York to maintain a newsstand on the said corner; that no part of said newsstand was located on, or abutted on, the defendant's premises, but was located wholly on property of the city of New York; that plaintiff conducted the business of selling newspapers and periodicals at said newsstand. The plaintiff then alleges:

"*Sixth.* That on or about or in the month of July, 1904, the defendant herein unlawfully demanded of the plaintiff herein the sum of Fifteen ($15) Dollars per month for the privilege of maintaining the said news stand at the aforesaid corner, and then and there *threatened that if the said sum was not paid to defendant he would cause the license of the plaintiff herein to be taken away and would cause the plaintiff to be ousted from the said location.*

"*Seventh.* That *under duress of the aforesaid threat and in apprehension of injury to the plaintiff's business* at the aforesaid news stand, the plaintiff herein thereafter regularly paid the said sum of Fifteen ($15) Dollars per month to the defendant herein until the month of June, 1910, when the defendant herein reduced the amount to Ten ($10) Dollars per month.

"*Eighth.* That thereafter the plaintiff regularly paid the said sum of Ten ($10) Dollars to the defendant herein until the month of April, 1916.

"*Ninth.* That the plaintiff herein has paid to the defendant and the defendant has received from the plaintiff as aforesaid in all the sum of Seventeen Hundred and Eighty ($1780) Dollars.

"*Tenth.* That said sum of Seventeen Hundred and Eighty ($1780) Dollars so received as aforesaid by the defendant herein *was obtained from the plaintiff unlawfully and without any*

*consideration whatsoever and without any right or authority and was paid by the plaintiff herein as aforesaid solely by reason of the said threat of the defendant herein* and in order to protect the business of the said plaintiff."

The answer sets up as an affirmative defense the Statute of Limitations, and as a partial defense to $1,080, part of the sum claimed by the plaintiff, defendant also pleads the Statute of Limitations. Plaintiff served a reply alleging that the duress was continuous, thereby tolling the Statute of Limitations.

In the first place, the essential allegations in the complaint are mere conclusions. Stripping the complaint of its conclusions, there are no facts pleaded which show that the payments were made under the compulsion of urgent and pressing necessity. It is not sufficient merely to characterize defendant's conduct as a " threat " or to allege that the payments were made " under duress." The complaint must state facts which constitute a legal basis for the charge of compulsion or involuntary payment, so that the court can see that the pleader's conclusion of law is justified. Here, where the claim is that defendant " threatened that if the said sum was not paid to defendant he would *cause* the license of the plaintiff herein to be taken away and would *cause* the plaintiff to be ousted from the said location," the words employed by the defendant should have been pleaded. This requirement does not offend the rule against pleading evidentiary matters, for that rule only applies to unnecessary allegations. It is sometimes necessary to plead matters more or less evidentiary in order to avoid pleading mere conclusions. For example, in an action for slander or libel, it would, of course, be insufficient to allege that the defendant, at a time and place, charged the plaintiff with dishonesty. The words complained of must be pleaded so that the court may determine in the first instance whether they are susceptible of the innuendo. Plaintiff's license, issued by the public authorities, could not be canceled by the defendant. *Causing* it to be canceled by the public authorities naturally implies a resort to proceedings to procure a cancellation. A statement of intention to resort to the courts or to public officials, however unjustified, is not a " threat,"

in a legal sense. If defendant had stated or suggested, by the words employed, that he would manufacture evidence against the plaintiff to procure his license to be canceled, or that he had or would employ political influence to bring about this result, and the words employed were pleaded, the court would be able to determine that there was a threat. It is impossible so to do, however, where not only are the words employed not pleaded but the description or summary of the alleged "threat" is readily susceptible of being interpreted as a statement of intention to resort to official or court proceedings.

In the next place, no facts showing compulsion or duress are pleaded. In actions brought to recover money paid under compulsion, the immediate necessity, or a reasonable belief in the immediate necessity, for making the payment, to avoid consequences for which no other means of relief are available, must be shown. Many cases have emphasized this. In *Radich* v. *Hutchins* (95 U. S. 210) Mr. Justice FIELD said: "To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, *from which the latter has no other means of immediate relief than by making the payment.*" In the recent case of *Maskell* v. *Horner* (L. R. [1915] 3 K. B. 106, 118) Lord READING, C. J., says: "If a person pays money, which he is not bound to pay, under the compulsion of urgent and pressing necessity or of seizure, actual or threatened, of his goods he can recover it as money had and received * * *. The payment is made for the purpose of averting a threatened evil and is made not with the intention of giving up a right but under immediate necessity and with the intention of preserving the right to dispute the legality of the demand." Numerous cases to the same effect will be found cited in Words and Phrases Judicially Defined (Vol. 3, p. 2269). In this case no facts are alleged to indicate that even the first payment was made under such pressure or compulsion as afforded the plaintiff no other means of immediate relief except by making the payment. There was nothing immediate that the defendant

could do.    Official action was necessary before the license could be canceled.    There was opportunity to appeal to the police or to the courts.    True, the defendant might have been a man of far-reaching political influence, or a domineering, overbearing bully who would stop at nothing, and an ignorant man might have believed that the defendant could accomplish his purpose without regard to law.    But no facts are alleged from which any such inferences can be drawn, and it is not even alleged that the plaintiff believed that the defendant could cause plaintiff's license to be canceled.    So far as appears from the complaint, the case is merely one of petty graft.    It is like the case of the janitor of an apartment house demanding a " commission " of a coal dealer under " threat " of turning the tenants' custom elsewhere, or a cook getting " presents " from the butcher and the grocer under " threat " to make trouble for them with their customers.    Such payments, like the payment in the case at bar, are without any legal consideration, but they are not involuntary in the sense of being made under duress.

This case presents a further difficulty for the plaintiff, although it is not necessarily involved in disposing of this appeal.    Only one threat was attempted to be alleged, namely, the original one of July, 1904.    Yet the complaint alleges that " thereafter the plaintiff regularly paid the said sum of Ten ($10) Dollars to the defendant herein until the month of April, 1916."    Even if the first payment were made under duress, it could not be successfully claimed that, where not another word ever passed between the parties, each monthly payment continuing thereafter for eleven years was made under duress of the original threat.    While it would not be necessary to allege or show a separate threat in connection with each monthly payment, it would be necessary to allege facts from which it would appear that each subsequent payment was under compulsion, or, failing this, that the subsequent payments were made under protest.    While no express words of protest are necessary, it must appear from the circumstances attending the payments subsequent to the first, extending over a period of eleven years, that it was the intention of the plaintiff to preserve the right to dispute the legality of the defendant's demand.    (*Maskell*

*v. Horner, supra.*) Especially should this be the rule in a case where the claim of duress is not raised until eleven years after the original " threat." (*Oregon Pacific R. R. Co.* v. *Forrest,* 128 N. Y. 91, 92, 93; *Williams* v. *Rutherfurd Realty Co.,* 159 App. Div. 171.) No such facts are alleged either in the complaint or in the reply.

The determination of the Appellate Term should be reversed, with ten dollars costs and disbursements, and the order of the City Court affirmed, with ten dollars costs and disbursements in the Appellate Term, with leave to plaintiff to serve an amended complaint on payment of costs.

CLARKE, P. J., SCOTT and DAVIS, JJ., concurred; SMITH, J., dissented.

Determination reversed, with ten dollars costs and disbursements, and order of City Court affirmed, with ten dollars costs and disbursements in the Appellate Term, with leave to plaintiff to amend on payment of costs.