National Apparel Adjustment Council, Inc., as Trustee in Bankruptcy of Dejay Stores, Inc., Appellant-Respondent, and Albert I. Gordon, as Trustee in Bankruptcy of United Star Companies, Inc., et al., Appellants, *v.* Dun & Bradstreet, Inc., Respondent-Appellant.

First Department, June 26, 1973.

*Morris Pottish* for appellants.

*John J. McAvoy* of counsel (*Orison S. Marden, Thomas J. O'Sullivan, III,* and *Laura Banfield* with him on the brief; *White & Case,* attorneys), for respondent-appellant.

*David F. Dobbins* of counsel (*Caesar L. Pitassy, Stanley Godofsky* and *Rodd McCormick Reynolds* with him on the brief; *Royall, Koegel & Wells,* attorneys), for appellant-respondent.

*Per Curiam.* This case was tried in 1969, embracing events that took place in 1962. It consumed 55 days of trial in all and, at its commencement, had a jury of 12 and 4 alternates; it finished, by consent, with a jury of 8. It started with 14 causes of action, sounding in malicious prosecution, libel and slander, and prima facie tort, and 8 causes fell along the way. The remaining 6 resulted in substantial verdicts for plaintiffs-appel-

lants, the trustees in bankruptcy of two corporations, Dejay Stores, Inc. and United Star Companies, Inc. The trustee plaintiffs will hereinafter be referred to by the abbreviated corporate names. Four of the verdicts were set aside by the court, three of them (second, sixth, and ninth causes) as against the weight of evidence; these we reinstate as to liability only, directing retrial on the issue of damage only. As to the last of these four (tenth cause), we affirm, there having been no direct damage to either successful plaintiff from the prima facie tort complained of, failing which recovery for punitive damage alone cannot be had. As to the remaining two causes (first and fifth), the verdicts were set aside by reason of the conduct of trial counsel, and retrial ordered. In arriving at the foregoing dispositions, the trial court considered pending motions for 26 months. After all this expenditure of time and energy, we conclude regretfully that retrial as to damages is required, the verdicts being grossly inflated and bearing no relation to what is to be made whole, i.e., the value of the corporate business destroyed by defendant's acts. Fortunately, retrial is not required as to liability for this continuing tort, the proof thereof having been clear and convincing, and, if accepted, as it was, by the jury, providing a basis for its finding as to liability.

The record presents the picture of a feud carried on by defendant, the well-known credit rating organization, against one Goldgar who had incurred defendant's ill-will. Concededly, defendant was "out to get" Goldgar and the corporate conglomerate he was attempting to erect. Unfortunately for Goldgar and his two chief companies, Dejay and Star, dissemination of derogatory information about him and his enterprises brought them crashing down into bankruptcy. Had this come about as a result of straightforward and honest credit reporting, that would have been the end of the matter. Unfortunately for defendant, the record discloses that its coup was accomplished by intrigue, deliberate assault on a business, planted rumor, and reckless disregard of consequences, going far beyond what the Trial Justice characterized as no more than a high degree of incompetence.

The various causes of action charge that defendant's employees, acting in contravention of defendant's usual practices, deliberately threw Dejay into involuntary bankruptcy by seeking out and assembling three petitioning creditors and, without complete authority and with deceit, causing the filing of such a petition. One creditor was owed $8,000, one a balance of $4,000 under an arrangement by which the debt had been reduced

from $16,000, and a third $57. A false rumor was bruited about that Goldgar was leaving the country and could not meet his bills. A mistaken report contained a typographical error indicating that Star had also gone into bankruptcy; the "correction" only worsened matters by concealing that the creditor with the arrangement, having inadvertently joined in the involuntary petition, was attempting to withdraw. Even while the dismissal of the involuntary petition was in progress, defendant's employees kept spreading rumors of voluntary bankruptcy, and Goldgar's principal factor froze his credits. The end result, after an abortive attempt at chapter 11 reorganization to relieve pressure and untimely payment demands, was actual bankruptcy. These accusations of malefaction were fully tried to a jury. The evidence was ample. The charge was impeccable, and not excepted to by defendant. The jury's verdicts on the five counts which we salvage from dismissals and settings aside were well founded as to liability.

In reinstating five verdicts on the issue of liability, we have considered defendant's claim that its "reporting" of information was done under a qualified privilege, capable of being defeated only by proof of malice. We need not reach the question of whether such a privilege actually obtained because, in any event, there was more than sufficient evidence from which the jury could have inferred that defendant's acts were deliberately malicious or so reckless in disregard of truth or consequences as to amount to the same thing. In this connection we bear in mind that, if each of defendant's employees' acts be considered alone, it might well be thought to be an individual honest mistake or piece of incompetence. However, when all the circumstances are considered together as one interwoven tissue, the jury would have been well justified in arriving at the conclusion that the acts of defendant's employees, together achieving one common result, committed in one brief sequence of days, in different parts of the country, were not merely an amazing series of coincidences, but were part of a common scheme or plan, deliberately and maliciously set on foot to injure Goldgar's business enterprises. Indeed, had this been a criminal trial, it is more than arguable that the case was proven beyond a reasonable doubt.

Nor does it help defendant to think of the operating force as being merely reckless disregard, which is at least as evil, particularly when indulged in by an agency enjoying defendant's reputation and position of trust, as deliberate malice. This is particularly so when it is borne in mind that all of defendant's

employees' acts were committed in an atmosphere of continued derogation, ranging from the mere snide to the outright denigratory, of Goldgar and his operations.

The verdicts under the first and fifth causes were set aside by the trial court because of the conduct of counsel during trial. We need not decide whether counsel's inflammatory tactics were compounded by the court's own conduct in rising to counsel's bait. The court did concede at one point that a mistrial should have been granted. We believe that the misconduct of counsel could have done no more than inflate the damage. It is not shown to have infected consideration of the liability issue, and proof as to this was sufficient to sustain the verdict as found on liability. It will be permitted to stand. The same is true as to the sufficiency of evidence on the second, sixth, and ninth counts, which was accepted by the jury, and these verdicts will be reinstated, but as to liability only. But, despite the proliferation of separate wrongs stated in separate counts, after eliminating duplications and leaving undisturbed those counts where defendant's conduct was at least arguably privileged or arguably not defamatory, what remains adds up to but only one course of conduct — as has been said, one continuing tort — resulting in only one bill of damages. Just as there can be only one total recompense for wrongful death of a person, there can be only one for the death of a business. Neither Dejay nor Star was destroyed more than once. The five verdicts on the reinstated counts total more than six million dollars and it cannot be successfully argued that there was proof that the destroyed business was worth that much. The retrial ordered on damages will therefore be for one bill as to Dejay (first, second, fifth, and ninth causes) and one for Star (sixth cause), and, as to the latter, there must be taken into consideration whatever mitigation there may have been by virtue of whatever correction actually took place of the report that Star as well as Dejay was bankrupt. In any event, whatever the recovery, it will inure only to the benefit of the creditors of both corporations.

As to the first and fifth causes of action, the judgment entered March 21, 1972, and the order entered February 18, 1972, should be modified on the law to strike therefrom the direction for a new trial, and a new trial should be directed on the issue of damages only, and the verdicts of the jury for plaintiff National Apparel Adjustment Council, Inc. (trustee of Dejay Stores, Inc.) on the first cause and on the fifth cause should be reinstated on the issue of liability; as to the second, sixth, and ninth causes of action, the said judgment and the said order should be modi-

fied on the law to strike therefrom the direction dismissing the said causes and granting judgment to the defendant notwithstanding the verdict, and the verdicts of the jury should be reinstated on the issue of liability only on the second and ninth causes of action in favor of plaintiff National Apparel Adjustment Council, Inc. (trustee of Dejay Stores, Inc.) and, on the sixth cause of action, in favor of Albert I. Gordon (trustee of United Star Companies, Inc.), and a new trial should be directed on the issue of damages; and the said judgment and the said order should be otherwise affirmed; and the appeal from the order entered January 14, 1972, superseded and resettled by the said order of February 18, 1972, should be dismissed as academic; all without costs.

STEVENS, P. J., MARKEWICH, MURPHY, STEUER and CAPOZZOLI, JJ., concur.

Order, Supreme Court, New York County, entered on February 18, 1972, and the judgment of said court entered on March 21, 1972, unanimously modified, on the law (as to the first and fifth causes of action), to strike therefrom the direction for a new trial and a new trial is directed on the issue of damages only, and the verdicts of the jury for plaintiff National Apparel Adjustment Council, Inc. (trustee of Dejay Stores, Inc.) on the first cause and on the fifth cause reinstated on the issue of liability; and (as to the second, sixth and ninth causes of action) to strike therefrom the direction dismissing the said causes and granting judgment to the defendant notwithstanding the verdict, and the verdicts of the jury reinstated on the issue of liability only on the second and ninth causes of action in favor of plaintiff National Apparel Adjustment Council, Inc. (trustee of Dejay Stores, Inc.) and, on the sixth cause of action, in favor of Albert I. Gordon (trustee of United Star Companies, Inc.), and a new trial directed on the issue of damages; and as so modified, the order and judgment are otherwise affirmed, without costs and without disbursements.

Appeal from the order of said court, entered on January 14, 1972, unanimously dismissed, as academic, without costs and without disbursements.

The order of this court entered on June 21, 1973 is vacated. [42 A D 2d 550.]