Carolee KOSTER, Plaintiff,

v.

CHASE MANHATTAN BANK, N.A. and
Allan Ross, Defendants.

No. 81 Civ. 5018 (PKL).

United States District Court,
S.D. New York.

May 28, 1985.

Lippman & Lippman, New York City (Harvey J. Lippman, John T. Cushing, of counsel), for plaintiff Carolee Koster.

Proskauer, Rose, Goetz & Mendelsohn, New York City (Morton M. Maneker, Elizabeth A. Alcorn, of counsel), for defendant Chase Manhattan Bank.

Milgrim, Thomajan, Jacobs & Lee, New York City (Robert L. Fink, Andrew L. Deutsch, of counsel), for defendant Allan Ross.

## MEMORANDUM AND ORDER

LEISURE, District Judge:

This is a suit for gender discrimination in employment. Plaintiff Carolee Koster has asserted numerous claims against her former employer, Chase Manhattan Bank ("Chase"), and Allan Ross, her immediate superior at Chase, under federal and state law, seeking injunctive and declaratory relief as well as damages. On January 7, 1983, Judge Goettel, to whom this case was originally assigned, denied defendants' motions to dismiss the complaint. *Koster v. Chase Manhattan Bank*, 554 F.Supp. 285 (S.D.N.Y.1983). He held that plaintiff had properly alleged a sexual harassment claim before both the EEOC and the Court; the Title VII action could proceed against Ross notwithstanding plaintiff's failure to name him as a respondent in the EEOC complaint; and that Ross was an "employer" within the meaning of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). Judge Goet-

tel permitted *Koster* to remedy defects in her allegations by repleading. In a footnote to his opinion, Judge Goettel refused to dismiss plaintiff's pendent state law claims. *Koster,* 554 F.Supp. at 290 n. 9.

Discovery is now complete and defendants have moved for summary judgment. Neither defendant attacks the Title VII claims in Count I. Both, however, challenge the EPA claim in Count II. Ross denies that he is an "employer" within the EPA; additionally, he joins Chase in challenging the EPA claim on grounds of legal insufficiency. Count III is a claim under state and city human rights provisions. Defendants challenge it on grounds of procedural deficiency, and Ross adds that he is in any event not an "employer" under the pertinent provisions. Count IV is directed against Ross alone. Ross sees it as a claim for defamation and moves to dismiss it because of untimeliness and lack of specificity. Koster characterizes it as a claim for prima facie tort.

Count V, also directed only against Ross, charges intentional infliction of emotional distress. Ross argues that the conduct alleged by Koster does not suffice to make out such a claim. Counts VI and VII allege, respectively, that Chase and Ross wrongfully discharged Koster and breached an implied condition of good faith in her employment contract. Defendants contend that neither action is cognizable under New York law.

## I. COUNT II: EQUAL PAY ACT.

■ The EPA prohibits employers from compensating employees of one sex at a lower rate than employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility and which are performed under similar working conditions," [1] except in four situations not relevant here. 29 U.S.C. § 206(d)(1). The work in question must be "equal," not merely comparable; Congress did not intend for courts to compare the value of different jobs. 29 C.F.R. § 800.120 (1984); *Hodgson v. Corning Glass Works,* 474 F.2d 226, 231 (2d Cir. 1973), *aff'd,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Nulf v. International Paper Co.,* 656 F.2d 553, 561 (10th Cir. 1981). The jobs need not be identical, though. It is sufficient if the job functions are substantially equal. *See id.; Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979), *aff'd,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); *Usery v. Columbia Univ.,* 568 F.2d 953 (2d Cir. 1977). The standard of comparison is actual job content, not job titles or descriptions. *Gunther,* 623 F.2d at 1309; *Marshall v. Building Maint. Corp.,* 587 F.2d 567, 571 (2d Cir.1978); *Rossini v. Ogilvy & Mather, Inc.,* 597 F.Supp. 1120, 1154 (S.D.N.Y. 1984).

■ Defendants argue that plaintiff has not demonstrated the existence of a genuine dispute regarding any fact material to her EPA claim that would warrant a trial on the merits. They say that plaintiff has not been able to point to a single male employee of Chase who performed substantially equal work but was paid more than plaintiff. Plaintiff claims that one Neil Owen was paid a higher salary than she for work substantially equal to hers.

Owen submitted an affidavit outlining the nature of the job he performed while he was employed at Chase.[2] According to Owen's affidavit, 60–80% of his time was spent doing various tasks in connection with updating, refining, and supervising use of Chase's Human Resources Information System ("HRIS") and other of Chase's computer systems. He designed certain system uses and applied statistical analysis. Koster's job entailed a number of tasks, mainly involving human resources planning and policies, but including as well budgeting, staffing and development, and certain special projects. According to Koster, she performed the work of three

---

1. The general standard and each of its components are defined in 29 C.F.R. §§ 800.119—800.-132.

2. Owen is no longer an employee of Chase. He is now president of his own company.

persons, and discharged all her duties excellently. She says she used the same computer Owen did, and, like Owen, performed statistical analysis. Moreover, she claims that part of Owen's work was transferred to her when he was unable to do it satisfactorily. Additionally, she alleges that a number of other male Chase employees performed work substantially equal to or less demanding than hers but were paid more than she was. She does not, however, name these other persons. The only named comparant is Owen.

It is well-settled that on a summary judgment motion I must construe the facts in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam). That does not, however, mean that the nonmoving party is without obligation when confronted with a summary judgment motion.

In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Fed.R.Civ.P. 56(e) to set forth *specific* facts showing that there is a genuine issue of material fact to be tried. If facts essential to support opposition to the summary judgment motion are not available, the nonmoving party may seek a continuance under Rule 56(f) to permit affidavits to be obtained or discovery to be had. He may not, however, rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or "upon the mere allegations or denials of his pleading," Fed.R. Civ.P. 56(e).

*L & L Started Pullets, Inc. v. Gourdine*, 762 F.2d 1 (2d Cir.1985) (emphasis added) (citations omitted). *See also Meiri v. Dacon*, 759 F.2d 989 (2d Cir.1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allega-

tions of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."); *Quarles v. General Motors Corp.*, 758 F.2d 839 (2d Cir.1985) ("Once a moving party has made a showing that no material issues of fact are in dispute, mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion."); *Barnett v. Howaldt*, 757 F.2d 23, 26 (2d Cir.1985) ("In the circumstances, plaintiffs were required to come forward with affidavits, deposition testimony, or other sworn documents containing admissible evidence to show that there was a genuine issue ..."); *JSP Agency, Inc. v. American Sugar Refining Co. of New York*, 752 F.2d 56, 59 (2d Cir.1985) ("Summary judgment ... will not be denied merely because of conclusory allegations or denials made by the opposing party.").

Plaintiff's assertions that her work was substantially equal to Owen's are unsupported.[3] True, she did point out certain areas of overlap between her tasks and Owen's, but this is not sufficient to show substantial equality under the EPA. "It is the overall job, not its individual segments, that must form the basis of comparison." *Gunther*, 623 F.2d at 1309. On the record before me, I cannot conclude that Koster's job and Owen's were substantially equal. At most, certain tasks were common to both jobs. But Koster did not do the extensive computer work Owen did, and Owen did not do the sort of planning and policy work Koster did. Koster argues that every Level 11 Vice President's job is comparable to hers for EPA purposes. That is not the case. "[T]he fact that jobs performed by male and female employees may have the same total point value under an evaluation system in use by the employer does not in itself mean that the jobs concerned are equal according to the terms of the statute." 29 C.F.R. § 800.121 (1984).

Discovery in this case has been complete for some time. Presumably, each party

---

**3.** Koster's description of Owen's job undermines her claim of substantial equality.

Ross didn't exactly put Owen into a function; instead, it seems more accurate to say that

Ross put Owen into "situations of high visability", [sic] so that Owen would come to know, and be known by, the bank's executives. Koster afft. ¶ 84.

has in its possession all the facts it will use at trial. Thus, if at this stage in the litigation, plaintiff can supply no names of higher paid coworkers besides Owen, I must conclude that her claims of higher paid males with equal or lesser duties are no more than speculation. Her failure to produce any specific evidence of males performing work substantially equal to hers at a higher rate of pay, which would raise a genuine issue of material fact, is fatal to her attempt to resist this summary judgment motion. Accordingly, defendants are entitled to summary judgment on Count II of the complaint.[4]

In light of my finding that no genuine issue of material fact exists which would permit the EPA claim to proceed, I need not address Ross's claim that he is not an EPA "employer."

## II. STATE LAW CLAIMS.

■ In his January 1983 opinion on defendants' motion to dismiss portions of the complaint, Judge Goettel wrote the following footnote.

The defendants have also moved to dismiss Counts III through VII, which concern alleged violations of New York State statutory and common law. Whether these claims are legally sufficient, however, need not be determined at this time. As the plaintiff can proceed on her federal causes of action and as the state claims are essentially based on the same facts as the federal ones, the Court thinks it better to await trial before addressing the issues raised by the remainder of the defendants' motions.

*Koster,* 554 F.Supp. at 290 n. 9. Plaintiffs contend that this footnote is law of the case which prevents defendants from challenging the sufficiency of the state law claims except at trial.

Of course, the law of the case doctrine does not demand unswerving blind adherence to prior rulings in the case. As Judge Learned Hand wrote in *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896, 898 (2d Cir.1924), "the 'law of the case' doctrine does not rigidly bind a court to its former decisions, but is only addressed to its good sense."[5] Thus, I may in proper circumstances correct erroneous earlier rulings.

■ This case does not, however, appear to be one in which the law of the case doctrine, or the Court's discretion to override it, is implicated. It is clear to me that Judge Goettel did not intend to foreclose all consideration of the legal sufficiency of Koster's allegations before trial. In the first place, he did not even rule on defendants' motions to dismiss the state claims. Rather, he felt that since development of the facts on the federal claims would be going ahead, and since the state claims rested on the same facts, a ruling on the state claims would not significantly affect discovery, so no decision was necessary. I see nothing in his opinion which would prevent the Court, after completion of discovery, from considering on a summary judgment motion whether there is anything in the state claims that merits bringing them to trial. Judge Goettel's refusal to rule at a far earlier stage of this litigation does not preclude me now from determining issues he did not address. Thus, the

---

**4.** This finding does not eliminate all of Koster's wage-based discrimination claims. It only holds that her claims under the EPA do not survive. She still may assert wage discrimination under Title VII. *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). And, of course, my holding on her EPA claim does not affect her ability to pursue Title VII claims for sexual harassment or disparate treatment.

**5.** With respect to a non-appealable denial of summary judgment, the law of the case is not a limit on the court's jurisdiction, but a rule of practice which may be departed from in the sound discretion of the district court. The first judge always has the power to change a ruling; further reflections may allow a better informed ruling in accordance with the conscience of the court. *A fortiori,* if the first judge can change his mind after denying summary judgment, and change his ruling, a second judge should have and does have the power to do so as well. *Corporacion De Mercadeo Agricola v. Mellon Bank Int'l,* 608 F.2d 43, 48 (2d Cir.1979).

law of the case doctrine has no effect here; there is no law of the case to apply.

I will now consider the legal sufficiency of each of plaintiffs' state law claims.

### A. *Statutory Claims.*

■ 1. *New York Human Rights Law.* N.Y.Exec.L. § 290 *et seq.* (McKinney 1982) is the New York Human Rights Law. Under § 297, an aggrieved individual has the choice of instituting either judicial or administrative proceedings. He may not, however, resort to both forums; having invoked one procedure, he has elected his remedies. *See* N.Y.Exec.L. § 297(9) (McKinney 1982); *West v. Technical Aid Corp.,* 111 Misc.2d 23, 24, 443 N.Y.S.2d 318, 320 (1981) ("Stated simply, the [administrative and judicial] remedies are mutually exclusive.") That does not affect his right to sue to enforce his federal rights by way of federal procedures, though. Title VII provides remedies additional to, not as substitutes for, any remedies otherwise available. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974) ("the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.") (footnote omitted). Filing an administrative complaint, however, cuts off the complainant's right to resort to the courts to redress state human rights law violations. There is one exception to this rule. "[W]here the division has dismissed such complaint on the grounds of administrative convenience, such person shall maintain all rights to bring suit as if no complaint had been filed." Exec.L. § 297(9).

Koster filed a complaint with the City Commission on Human Rights on September 25, 1980. Months went by without any action by the Commission. Although Koster made repeated inquiries, she received no straight answers as to when an investigation would be instituted or how long it would take. Finally, in mid-1981, she withdrew her administrative claim effective June 30, 1981, and filed this suit in federal court.

Koster now argues that her withdrawal of her administrative complaint should be construed as tantamount to a dismissal for administrative convenience. She argues that "public policy certainly requires that if plaintiff is not afforded the opportunity to obtain relief in an administrative proceeding due solely to the inability of the administrative agency to act, she should then be able to pursue that relief in the courts, a right which plaintiff would otherwise have." (Pl.Mem. at 14).

I emphatically agree that the Commission's treatment of complaints from individuals who may have suffered severe indignities and harms for no reason other than their race, sex, religion, or other protected characteristic is at best lamentable. At worst, the ineptitude or sloth of the Commission exacerbates the injuries already inflicted on the complainants by conveying indifference. However, the Executive Law does not provide any recourse for a disaffected complainant. Indeed, it is unclear whether a complainant who is rightly dissatisfied with the administrative non-handling of his case has it open to him to request that the Commission dismiss his complaint for administrative convenience so that he can pursue his remedies in court. *See Meschino v. International Tel. & Tel. Corp.,* 563 F.Supp. 1066, 1074–75 (S.D.N.Y. 1983). Apparently, under state and city law patience with bureaucratic inefficiency is a necessary virtue.

Despite the deplorable administrative situation, however, I cannot sustain plaintiff's claim under the Human Rights Law. Plaintiff has pointed me to no authority which would authorize overriding the procedural dictates of § 297(9), nor have I been able to find any. Indeed, the New York Court of Appeals has held that withdrawal of an administrative complaint precludes bringing an action in court. *Emil v. Dewey,* 49 N.Y.2d 968, 428 N.Y.S.2d 887, 406 N.E.2d 744 (1980). On this issue I am bound to follow the dictates of the state's highest court. Nothing in federal law (spe-

cifically Title VII) compels following anything other than state-mandated procedures to vindicate state law rights. Accordingly, plaintiff's claim under the New York Human Rights Law can not stand.

■ 2. *New York City Administrative Code.* Defendants argue that the City's human rights law, 2 N.Y.City Admin.Code §§ B1–1.0 *et seq.* (1976 & Supp.1984–1985), does not confer a private right of action, so that plaintiff can not base a claim on it. In the circumstances of this case, I agree.

Chapter 1, Title B of the Code sets up the Commission, outlines its jurisdiction and the rights it will protect, and specifies the procedures to be followed. Section B1–9.0 provides for judicial review of Commission orders. There is no provision for a private action in the absence of a determination by the Commission.

Since plaintiff did not pursue the administrative procedures to a conclusion, the judicial review provisions of § B1–9.0 do not apply. I see no other basis in Title B for a claim for relief in a judicial proceeding. Thus, Count III cannot be sustained on the basis of the City Administrative Code.

## B. *Count IV.*

In Count IV, plaintiff alleges as follows.

From June, 1979 through October, 1980, defendant Ross intentionally, willfully and maliciously subjected plaintiff to a compaign [sic] of sexual harassment and outrageous conduct and verbal abuse, without excuse or justification and with intent to harm plaintiff or with a wanton and reckless desregard [sic] of the consequences to plaintiff, thereby injuring plaintiff's business and personal reputation, causing plaintiff great embarrassment and humiliation, causing plaintiff to be discharged by Chase, rendering plaintiff unable to secure other employment and causing plaintiff substantial loss of earnings and other financial damage.

(Second Amended Complaint ¶ 23). Ross argues that because reputational injury is alleged, this claim necessarily is one for defamation, and is invalid because of time bar and lack of specificity. Koster denies this is a defamation claim, characterizing it instead as prima facie tort.

■ Allegation of injury to reputation among other injuries does not necessarily restrict a claim to one for defamation. Indeed, a defamation claim and a prima facie tort claim may coexist. *See, e.g. National Apparel Adjustment Council, Inc. v. Dun & Bradstreet, Inc.,* 42 A.D.2d 550, 345 N.Y.S.2d 40 (1973) (prima facie tort claim defective not because defamation was also alleged, but because of lack of direct damages). Here, Koster alleges deliberate conduct calculated to harm her, motivated by no reason other than a malicious desire by Ross to cause her injury. That is the gravamen of prima facie tort. *See ATI, Inc. v. Ruder & Finn, Inc.,* 42 N.Y.2d 454, 398 N.Y.S.2d 864, 368 N.E.2d 1230 (1977). However, an action for prima facie tort may not proceed absent allegations of special damages. *Wehringer v. Helmsley-Spear, Inc.,* 91 A.D.2d 585, 457 N.Y.S.2d 78 (1982), *aff'd,* 59 N.Y.2d 688, 463 N.Y.S.2d 417, 450 N.E.2d 223 (1983). Here, Koster has neither alleged nor offered to prove any special damages traceable to malicious outrageous conduct by Ross. Her ad damnum clause for this claim requests an even $1 million, which implies an absence of special damages. Thus, her prima facie tort claim can not proceed. Ross must be awarded summary judgment on Count IV.

## C. *Count V—Emotional Distress.*

■ Koster's fifth claim is for damages due to Ross's alleged intentional infliction of emotional distress. Ross argues that the conduct alleged by Koster is as a matter of law insufficient to sustain a claim for intentional infliction of emotional distress.

In *Fischer v. Maloney,* 43 N.Y.2d 553, 557, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978), the Court of Appeals adopted the formulation of the Restatement (Second) of Torts § 46(1): "One who by extreme and outrageous conduct intentionally ... causes severe emotional distress to another

is subject to liability for such emotional distress." Comment d to § 46 states that to be actionable, the conduct must be so extreme and egregious as to exceed all bounds of decency and civilized behavior. *See also Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y. S.2d 232, 236, 448 N.E.2d 86, 90 (1983). Ross argues that Koster's allegations do not describe conduct sufficiently outrageous and extreme to make out a case of intentional infliction of emotional distress. I disagree.

In her affidavit (¶¶ 53–56 & Ex. 36) Koster describes a continuous course of conduct from July 1979 to August 1980 that amounts to harassment and hounding. Much of the conduct had lurid sexual overtones. Although each individual act alleged by Koster is probably not actionable, when aggregated over time, the continuous nature of the conduct may make it sufficiently outrageous that a jury could reasonably find in Koster's favor. *See Nader v. General Motors Corp.*, 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 654, 255 N.E.2d 765, 770 (1970) ("where severe mental pain and anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation, a remedy is available in the form of an action for intentional infliction of emotional distress"); *Mitran v. Williamson,* 21 Misc.2d 106, 197 N.Y.S.2d 689 (Sup.Ct. Kings Co. 1960); W.P. Keeton, D.B. Dobbs, R.E. Keeton & D.G. Owen, *Keeton & Prosser on the Law of Torts* § 12 at 61–62 & n. 62 (5th ed. 1984).

Koster's claim is, however, barred by the statute of limitations. As an intentional tort, this claim has a one-year limitations period under CPLR § 215. Koster filed this action on August 11, 1981; she was fired on August 13, 1980. All acts occurring before the limitations period are excluded from consideration. *See Weisman v. Weisman,* 485 N.Y.S.2d 570 (App.Div. 1985). Only a very short amount of time is within the limitations period, and Koster has not alleged any conduct by Ross within that period that in and of itself is sufficiently extreme, outrageous and uncivilized to be actionable. I therefore am constrained to grant summary judgment to Ross on Count V.

### D. *Counts VI and VII.*

■ In Count VI of the complaint Koster purports to state a tort claim for wrongful or abusive discharge against Ross and Chase. Defendants correctly point out that New York does not recognize a tort of wrongful or abusive discharge where the plaintiff was an at-will employee. *Murphy,* 58 N.Y.2d at 300–02, 461 N.Y.S.2d 232, 448 N.E.2d 86.[6]

■ Her final cause of action is for breach of an implied covenant of good faith and fair dealing in her employment contract. Unless a former employee alleges that the employer made representations that the discretion of the employer in choosing to discharge her was less than unfettered, and that the plaintiff relied on those representations to her detriment, *Weiner v. McGraw-Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982), no such implied covenant exists in at-will employment contracts. *Murphy, supra,* 58 N.Y.2d at 304–05, 461 N.Y.S.2d 232, 448 N.E.2d 86; *Wernham v. The Rt. Rev. Paul Moore, Jr.,* N.Y.L.J. Apr. 15, 1985 at 7, col. 4, col. 6. Koster has not alleged any such representations.

Defendants must be awarded summary judgment on Counts VI and VII.

### III. CONCLUSION.

The motion of defendants Chase and Ross for summary judgment is granted as to Counts II, III, VI and VII. Summary judgment is granted in favor of defendant Ross as to Counts IV and V. Koster's claims of sexual harassment and disparate treatment will be considered under Title VII.

---

**6.** With certain exceptions not applicable here, "... New York has long held that employment for an indefinite term is terminable at the will of either party at any time, for any reason, or for no reason at all." *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847 (2d Cir. 1985).

Since the only remaining claims are in Count I of the complaint, a claim under Title VII, plaintiff's demand for a jury trial is hereby stricken. Trial will be to the Court.

SO ORDERED.