Carol OVERALL, Plaintiff,

v.

Leopold Hugo Paul KLOTZ, Defendant.

No. 92 Civ. 2142 (JES).

United States District Court,
S.D. New York.

March 17, 1994.

Gelman & Feinberg, New York City (Phyllis Gelman, of counsel), for plaintiff.

Jacobs Persinger & Parker, New York City (I. Michael Bayda, of counsel), for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

This is a diversity action for assault and battery, false imprisonment and intentional infliction of emotional distress based on conduct that plaintiff alleges occurred during the period 1947 through 1949. Defendant has moved for summary judgment dismissing plaintiff's complaint because plaintiff failed to commence this action before the expiration of the statute of limitations. For the reasons that follow, defendant's motion is granted.

## BACKGROUND

The facts, denied by the defendant, but assumed to be true for purposes of this motion, are as follows. Plaintiff Carol Overall ("Overall") was born in New York City on November 8, 1942 to defendant Leopold Hugo Paul Klotz ("Klotz") and his former wife Vera Montgomery Klotz. Complaint ¶ 6. After the divorce of her parents in 1947 and until March 1950, Overall lived under her father's supervision in Dallas, Texas. Complaint ¶ 12. Overall claims that during that period, Klotz beat and sexually assaulted her regularly, Complaint ¶¶ 13–17, and that he threatened to dismember, burn, mutilate and/or kill Overall if she reported his actions. Affidavit of Carol Overall sworn to October 7, 1992 ("Overall Aff.") ¶¶ 9–10, 18. Overall also alleges that Klotz continued to abuse her by sending her to a convent boarding school in Arcadia, Missouri for the 1948–49 school year, Complaint ¶¶ 18–19, and to another convent boarding school in Mississippi for part of the 1949–50 school year. Complaint ¶¶ 20–21.

In approximately March 1950, Overall's mother regained custody of her daughter and brought her back to New York City to live with her and her new husband John Overall, Jr. and their two children. Complaint ¶ 21; Deposition of Carol Overall, annexed to Bayda Decl. ("Overall Dep.") at 49–50. Overall alleges that, because Klotz threatened to harm or kill her if she ever disclosed his actions to another person, she suppressed all memory of her father's abuse until May 1990 and was unable to confront him with her memories until June 1991. Complaint ¶ 11; Overall Aff. ¶¶ 26, 35, 38.

Overall's contact with Klotz during her adolescence dwindled thereafter to two or three visits to Klotz's office made at her mother's direction to ask for money for school trips. Overall Aff. ¶¶ 27–28. In her adult life, Overall encountered her father at least twice in unplanned meetings in and around New York City. Overall Aff. ¶ 29; Overall Dep. at 81–82. Plaintiff alleges that she once met Klotz while both were waiting for a bus going to upstate New York. Overall Aff. ¶ 29; Overall Dep. at 82–83. She and Klotz sat together on the bus and allegedly discussed the topics of Hitler, financial stability, and business travel. Overall Aff. ¶ 29; Overall Dep. at 83. On another occasion, Overall alleges that she met her father at a dinner dance at the home of an ambassador. Overall Aff. ¶ 29; Overall Dep. at 83–84. Overall alleges that her father did not recognize that she was his daughter and that, when she danced with him, Klotz made sexual advances toward her, which she repelled. Overall Dep. at 84.

Overall admits that she also sought meetings with Klotz on certain occasions. In 1981, a year during which Overall alleges she was experiencing stressful personal and financial problems, Overall went to Klotz's home to request financial assistance. Klotz gave her $2,000 at that time to help her move

to California. Overall Dep. at 68, 88–91. In addition, in June 1991, after Overall allegedly regained her memory of the events of 1947–1950, Overall alleges that she visited Klotz to discuss his abusive treatment of her and to ask for money. Overall Dep. at 91, 93–97.

According to the Complaint, Klotz's threats, together with his abusive acts, induced in Overall a psychological condition which caused her to repress the memory of Klotz's acts and to be unable to understand his abuse. Notwithstanding her memory suppression, plaintiff asserts that the effects of her father's abuse have been manifested in various aspects of her personal and professional life. To wit, Overall claims that Klotz's abuse has afflicted her with feelings of terror, insecurity, and worthlessness, and caused her to never marry, have children or develop a career, and to be attracted to men who emotionally and physically abuse her. Overall Aff. ¶¶ 30–32.

Despite this pattern of psychological and emotional problems throughout her adult life, Overall did not seek professional advice and treatment until the age of forty-six, when in March 1988, after the death of her half-brother, Overall consulted Dr. Judith Schwartz, a psychotherapist. Affidavit of Judith Schwartz dated October 8, 1992 ("Schwartz Aff.") ¶ 3. Dr. Schwartz diagnosed Overall as suffering from a post-traumatic stress disorder and a borderline personality disorder with histrionic features, Schwartz Aff. ¶ 19, a diagnosis that has been confirmed by plaintiff's expert psychiatrist. Affidavit of Stuart Grassian, M.D., dated October 7, 1992 ("Grassian Aff.") ¶ 4.

Overall alleges that, through this therapy, she began in May 1990 to regain her memory of Klotz's alleged abuse. Overall Aff. ¶¶ 35–36. In April 1991, Overall told her mother that her father had sexually abused and traumatized her when she lived with him in Texas and that she intended to confront her father and ask him for financial assistance. Overall Aff. ¶ 37; Overall Dep. at 132–33. Two months later, in June 1991, Overall confronted Klotz with accusations of abusive treatment and asked him for financial assistance. Overall Dep. at 91, 94–97.

Finally, on March 26, 1992, Overall commenced this action. Although Overall's Complaint alleged ten causes of action, she has withdrawn all but three claims, which are framed as assault and battery (Count I), false imprisonment (Count III), and intentional infliction of emotional distress (Count IV). Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl.Mem.") at 3 n. 1. Klotz has moved for summary judgment dismissing the Complaint on the ground that each of Overall's claims is barred by the applicable statute of limitations.

## DISCUSSION

Summary judgment may be granted only where "there is no genuine issue as to any material fact" and a party is "entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). On a motion for summary judgment, this Court is not to weigh evidence and make credibility findings, but rather to determine whether or not there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As the Supreme Court stated in *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), however, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. at 1355. Summary judgment on the basis of the expiration of a statute of limitations thus is appropriate where the plaintiff fails to show the existence of any genuine issue of fact relating to the statute of limitations defense.

Plaintiff alleges that the conduct that forms the basis of her claims of assault and battery and intentional infliction of emotional distress occurred in Texas between 1947 and 1949, Complaint ¶¶ 31–33, and that her claim of false imprisonment is based on conduct that occurred in Texas, Missouri and Mississippi between 1947 and 1949. Complaint ¶¶ 37–38. In order to determine whether to apply the statute of limitations of New York, Texas, Missouri, or Mississippi in this diversity action, this Court must look to New York law. *Sun Oil Co. v. Wortman,* 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988). The

New York borrowing statute, N.Y.Civ.Prac. L. & R. § 202 (McKinney 1990), and its predecessor statute, N.Y.Civ.Prac.A. § 13, which was applicable at the time the alleged events took place, provide that where, as here, a cause of action has accrued outside New York, the applicable statute of limitations is that of New York or of the state where the cause of action accrued, whichever is shorter. Therefore, if Overall's action would be untimely under New York law, as discussed below, it must be dismissed regardless of whether it would be barred under the law of Texas, Missouri or Mississippi.

■ In New York, claims for the intentional torts of assault and battery, false imprisonment, and intentional infliction of emotional distress [1] are governed by the one-year statute of limitations set forth in N.Y.Civ. Prac. L. & R. § 215(3) (McKinney 1990). *Koster v. Chase Manhattan Bank,* 609 F.Supp. 1191, 1198 (S.D.N.Y.1985); *Hansen v. Petrone,* 124 A.D.2d 782, 508 N.Y.S.2d 500 (App.Div.1986); 2 Carmody–Wait 2d § 13.74 (1965). Although New York's one-year statute of limitations may be tolled during a complainant's infancy, N.Y.Civ.Prac. L. & R. § 208 (McKinney 1990), Overall's right to a tolling based on infancy expired in 1960, when she reached 18 years of age. *See Thorn v. New York City Dept. of Social Servs.,* 523 F.Supp. 1193 (S.D.N.Y.1981); *Bassile v. Covenant House,* 152 Misc.2d 88, 575 N.Y.S.2d 233 (Sup.Ct.1991).

■ Overall contends, however, that the statute of limitations on her claims against Klotz was tolled pursuant to New York law until June 1991 because until that time she was under the continuous influence of Klotz's duress. Overall Aff. ¶ 1. Under New York law, "when duress is part of the cause of action," the statute of limitations is tolled until the duress has ended "because the offensive conduct is regarded as a continuous wrong." *Baratta v. Kozlowski,* 94 A.D.2d 454, 464 N.Y.S.2d 803, 806 (App.Div.1983) (*citing Kamonitsky v. Corcoran,* 97 Misc. 384, 161 N.Y.S. 756, 759 (App.Term 1916), *rev'd on other grounds,* 177 A.D. 605, 164 N.Y.S. 297 (App.Div.1917)); *see also Pacchiana v. Pacchiana,* 94 A.D.2d 721, 462 N.Y.S.2d 256, 257 (App.Div.1983). However, continuing duress may toll a statute of limitations only until the asserted coercion ceases. *See Pacchiana, supra,* 462 N.Y.S.2d at 257; *see also Greene v. Greene,* 56 N.Y.2d 86, 451 N.Y.S.2d 46, 436 N.E.2d 496 (1982); *see also Cullen v. Margiotta,* 811 F.2d 698, 723 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987).

■ Even assuming, *arguendo,* that duress is "an element of the cause[s] of action asserted," *Cullen, supra,* 811 F.2d at 722,[2] Overall has not shown that the alleged duress continued up to and during a period of time not barred by the statute of limitations. *Kamonitsky, supra,* 161 N.Y.S. 756. Although she alleges that the defendant threatened her on numerous occasions from 1947 through 1949, over forty years prior to the commencement of this action, according to her own testimony, the last threat was made prior to the time she left for the convent school in Chatawa, Mississippi, in or about September of 1949. Overall Dep. 33–36. She has not lived with Klotz since that time. Overall Aff. ¶ 22; Overall Dep. at 46. Nor has she alleged any conscious fear of Klotz in her adult meetings with him, during which she voluntarily conversed and danced with him, Overall Dep. at 81–83, 88–91, and even repelled his sexual advances. Overall Dep. at 84. It follows that no rational trier of fact could conclude that Overall was still under

---

1. Although intentional infliction of emotional distress is not specifically named among the intentional torts for which a one-year statute of limitations is applicable under N.Y.Civ.Prac.L. & R. § 215(3) (McKinney 1990), New York courts have held that this one-year statute of limitations does apply to claims of intentional infliction of emotional distress. *See Koster v. Chase Manhattan Bank,* 609 F.Supp. 1191, 1198 (S.D.N.Y. 1985).

2. Duress, defined under New York law as "actual or threatened violence or restraint contrary to law," *Candid Prods., Inc. v. SFM Media Serv. Corp.,* 51 A.D.2d 943, 381 N.Y.S.2d 280, 282 (App.Div.1976), tolls the running of a statute of limitations only if the alleged duress is "an element of the cause of action asserted." *Cullen v. Margiotta,* 811 F.2d 698, 722 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The Court will assume that this requirement is satisfied here.

the influence of Klotz's duress within one year of the date on which she filed her Complaint on March 27, 1991. *Schmidt v. Bishop*, 779 F.Supp. 321, 330–31 (S.D.N.Y. 1991).

■ Moreover, since Overall claims to have had no memory of her father's alleged abuse until May 1990, there can be no merit to her argument that her father's duress caused her to refrain from suing before that date. *Harrison v. Harrison*, 790 F.Supp. 443, 454 (S.D.N.Y.1992). By definition, it is essential to tolling because of duress that the victim be aware of the alleged duress so that it can and does play a role in a decision not to commence the action. As the court stated in *Candid Prods., Inc. v. SFM Media Serv. Corp.*, 51 A.D.2d 943, 381 N.Y.S.2d 280, 282 (Sup.Ct.1976):

> "Duress is actual or threatened violence or restraint contrary to law. It has been said that duress is a species of fraud in which compulsion in some form takes the place of deception in accomplishing an injury. Differently expressed, the injury is accomplished in fraud without the knowledge of the victim, while in duress he is fully conscious of the illegal element."

*See also In re Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 757 (2d Cir. 1967) ("However duress may be defined, a key element today is the state of mind of the person threatened."); *United States v. Esposito*, 654 F.Supp. 664, 669 (S.D.N.Y.), *aff'd*, 834 F.2d 272 (2d Cir.1987). Indeed, recognizing that New York's tolling provisions cannot be applied to the type of unconscious fear of bringing suit associated with post-traumatic stress disorders, the New York courts have

> call[ed] upon the legislature to rectify the intolerably unfair situation under the current law of victims of sexual abuse in . . .

cases where the plaintiff can establish a repression of the acts forced upon her prior to her attaining the age of majority and where such repression caused plaintiff to commence a civil action only subsequent to the expiration of the statute of limitations.

*Steo v. Cucuzza*, N.Y.L.J., July 16, 1993, at 21 (Sup.Ct.1993). *See also* Carolyn B. Handler, Note, *Civil Claims of Adults Molested as Children: Maturation of Harm and the Statute of Limitations Hurdle*, 15 Fordham Urb.L.J. 709, 738–742 (1987).

Here, the alleged coercion—instilling Overall with conscious fear of serious harm or death—ceased when Overall's conscious awareness of that fear ceased. Thereafter, Overall's delay in suing was due to her lack of knowledge of the events now alleged rather than a fear of any repercussions. In sum, while plaintiff arguably may have suffered an injury in the remote past resulting from defendants conduct, to the extent that that injury suppressed knowledge of the defendant's duress, it can no longer afford a basis for tolling predicated upon a continuing conscious fear of the defendant's reprisal.[3]

■ In any event, even if tolling based on duress were allowable, these claims are barred by the one-year limitations period prescribed by N.Y.Civ.Prac.L. & R. § 215(3) (McKinney 1990) because, by her own admission, Overall's memory suppression with respect to the defendant's conduct ceased more than one year before she filed this action. Plaintiff has alleged and testified that her first memories of the alleged abuse came in May 1990. Overall Aff. ¶ 35–36; Overall Dep. at 78. She also testified that her subsequent memories occurred over a period of one to two months thereafter, Overall Dep. at 78–80, during which she related her alleged memories to her psychotherapist, Schwartz

---

3. It is also significant that the New York Court of Appeals has specifically held that statutory tolling for insanity does not apply to a person "claiming a mere post traumatic neurosis," *McCarthy v. Volkswagen of America, Inc.*, 55 N.Y.2d 543, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1982), but only to those "who are unable to protect their legal rights because of an overall inability to function in society." *Id.* at 459, 435 N.E.2d at 1074. *See also Smith v. Smith*, 830 F.2d 11 (2d Cir.1987); *Dumas v. Agency for Child Development–New York City Head Start*, 569 F.Supp. 831 (S.D.N.Y.1983). Overall does not fall within the latter category. In any event, New York permits a tolling of ten years even in cases of insanity. *See* C.P.L.R. § 208. It would therefore hardly be consistent with New York law to afford a person with a less severe mental impairment a longer tolling period.

Aff. ¶ 11–17; Overall Aff. ¶ 36; Overall Dep. at 80; *see also* Overall Dep. at 132. Notwithstanding her renewed awareness of Klotz's conduct, Overall did not commence this action until March 26, 1992, more than one year after these events had occurred. Accordingly, her claims must be barred as untimely under the one-year New York statute of limitations.

## CONCLUSION

Accordingly, for the reasons stated above, defendant's motion for summary judgment shall be and hereby is granted. The Clerk of the Court is directed to close the above-captioned action.

It is **SO ORDERED.**